# EXHIBIT A

Vincent Miletti, Esq. (# 078322013)
Miletti Law, P.C. d/b/a The Law Offices of Vincent Miletti, Esq.
10 Halletts Point # 1742
Astoria, New York 11102
(609) 353-6287
VMiletti@Milettilaw.com
*Attorney for Plaintiff*

| | |
|---|---|
| FADY AL HAMARNEH,<br><br>                              Plaintiff,<br><br>- v -<br><br>UNITED AIRLINES, TONY CALMUSA, EVA CASTILLO, SEVAN KARABETIAN, CYRUS SARKARI, SAL SANCHEZ, ERICKA BALDWIN, ANETTE GADSON, BOBBI COULTON, and CATHERINE PIMENTAL,<br><br>                            Defendants. | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION**<br>**ESSEX COUNTY**<br><br>DOCKET NO. ~~ESX~~ L 002050 -24<br><br>**CIVIL ACTION**<br><br>**SUMMONS** |

FROM THE STATE OF NEW JERSEY TO THE DEFENDANT(S) NAMED ABOVE:

      The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

      If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

Page 1 of 2

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

Respectfully Submitted,

Dated        March **22**, 2024
             Astoria, New York

                                      Vincent Miletti, Esq.
                                      Miletti Law, P.C.
                                      d/b/a The Law Firm of Vincent Miletti, Esq.
                                      10 Halletts Point, Suite # 1742
                                      Astoria, New York 11102
                                      (609) 353-6287
                                      VMiletti@Milettilaw.com
                                      *Attorney for Plaintiff*

To           Bobbi Coulton
             *Atorney to be Noticed*

Vincent Miletti, Esq. (# 078322013)
Miletti Law, P.C. d/b/a The Law Offices of Vincent Miletti, Esq.
10 Halletts Point # 1742
Astoria, New York 11102
(609) 353-6287
VMiletti@Milettilaw.com
*Attorney for Plaintiff*

|  |  |
|---|---|
| FADY AL HAMARNEH,<br><br>                                    Plaintiff,<br><br>- v -<br><br>UNITED AIRLINES, TONY CALMUSA, EVA CASTILLO, SEVAN KARABETIAN, CYRUS SARKARI, SAL SANCHEZ, ERICKA BALDWIN, ANETTE GADSON, BOBBI COULTON, and CATHERINE PIMENTAL,<br><br>                                    Defendants. | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION**<br>**ESSEX COUNTY**<br><br>**DOCKET NO. _____**<br><br>**CIVIL ACTION**<br><br>**VERIFIED COMPLAINT & JURY DEMAND** |

Plaintiff, FADY AL HAMARNEH ("Al Hamarneh" or "Plaintiff"), by and through his attorney, Vincent Miletti, Esq., by way of Complaint against the defendants United Airlines ("United" or "UA"), Tony Calamusa ("Calamusa"), Eva Castillo ("Castillo"), Sevan Karabetian ("Karabetian"), Cyrus Sarkari ("Sarkari"), Sal Sanchez ("Sanchez"), Ericka Baldwin ("Baldwin"), Anette Gadson ("Gadson"), Bobbi Coulton ("Coulton"), and Catherine Pimental ("Pimental"), (collectively referred to herein as "defendants"), states as follows:

## NATURE OF THE ACTION

1.    Plaintiff Fady Al Hamarneh brings this action pursuant to N.J.S.A. 10:5-1 et seq., the New Jersey Law Against Discrimination ("NJLAD") and Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., along with related state laws seeking compensatory damages, punitive damages and attorney's fees under the provisions of those laws.

2.      Defendants, individually, jointly and in concert, discriminated against Plaintiff Fady Al Hamarneh based on his race and national origin. Said discrimination was willful, intentional and with full knowledge of Plaintiff's race and national origin.

## PARTIES

3.      Plaintiff, Mr. FADY AL HAMARNEH, is an individual residing in Brooklyn, New York 11204, who at all times herein mentioned was a resident of Kings County, New York. Mr. Al Hamarneh is a former Customer Service Representative for United Airlines.

4.      Defendant, UNITED AIRLINES is a foreign corporation authorized to do business in New Jersey and actually doing business at Newark Airport, located in the County of Essex.

5.      At all times in this action, to the belief of the Plaintiff, the Individual Defendant TONY CALMUSA is an employee of United Airlines as a Supervisor, has supervisory control, and works out of Essex County.

6.      At all times in this action, to the belief of the Plaintiff, the Individual Defendant EVA CASTILLO is an employee of United Airlines in the HR department, is a business partner, has supervisory control, and works out of Essex County.

7.      At all times in this action, to the belief of the Plaintiff, the Individual Defendant CYRUS SARKARI is an employee of United Airlines as a Director, has supervisory control, and works out of Essex County.

8.      At all times in this action, to the belief of the Plaintiff, the Individual Defendant SEVAN KARABETIAN is an employee of United Airlines as a Director, has supervisory control, and works out of Essex County.

9.     At all times in this action, to the belief of the Plaintiff, the Individual Defendant SAL SANCHEZ is an employee of United Airlines as a Supervisor, has supervisory control, and works out of Essex County.

10.     At all times in this action, to the belief of the Plaintiff, the Individual Defendant ERICKA BALDWIN is an employee of United Airlines as a Training Supervisor, has supervisory control, and works out of Essex County.

11.     At all times in this action, to the belief of the Plaintiff, the Individual Defendant ANETTE GADSON is an employee of United Airlines as a General Manager, has supervisory control, and works out of Essex County.

12.     At all times in this action, to the belief of the Plaintiff, the Individual Defendant BOBBI COULTON is an employee of United Airlines as a Supervisor, has supervisory control, and works out of Essex County.

13.     At all times in this action, to the belief of the Plaintiff, the Individual Defendant CATHERINE PIMENTAL is an employee of United Airlines as a Supervisor, has supervisory control, and works out of Essex County.

## JURISDICTION & VENUE

14.     Venue is proper in Essex County because it is the county in which the cause of action arose, as the acts which form the basis of this action all took place in Essex County. Furthermore, Defendant United Airlines has a principal place of business in the City of Newark, County of Essex.

## PROCEDURAL REQUIREMENT

15.    Prior to filing this lawsuit, Mr. Al Hamarneh filed a charge of discrimination with the Equal Employment Opportunity Commission and received a "Notice of Right to Sue" dated March 1, 2024. A true and accurate copy of the Notice of Right to Sue is attached.

## FACTS

16.    The Company hired Mr. Al Hamarneh in November of 2021 as a Customer Service Representative (CSR). Before joining the Company, Mr. Al Hamarneh had graduated with a Bachelor's in Graphic Design from Carson Newman University.

17.    In his role as a CSR, Mr. Al Hamarneh was responsible for checking passengers into their flights, working at the gate to ensure the aircraft were properly cleaned and ready for departure, checking in the flight crew, boarding passengers, and opening and closing the aircraft doors. He reported to Toni Calamusa.

18.    Furthermore, Mr. Al Hamarneh excelled in this position, as demonstrated by his achievements, such as receiving a 100% compliance score on a Mystery Shopper Audit on September 19, 2023, and receiving outstanding feedback on recognition.performnet.com from other UA employees who worked with him, on at least five separate occasions.

### a. Discriminatory Treatment Suffered by Mr. Al Hamarneh.

19.    In November 2022, an incident occurred where Supervisor Catherine Pimental made an inappropriate remark about Mr. Al Hamarneh, referring to his "Italian intimidating look." This comment was not only offensive but also discriminatory, undermining Mr. Al Hamarneh's national origin, family history, and background. Moreover, it perpetuated harmful racial and ethnic stereotypes, further demeaning Mr. Al Hamarneh. Understandably, Mr. Al Hamarneh was deeply troubled by this conduct, a reaction that should not surprise the Company. In response to this unacceptable behavior, Mr. Al Hamarneh, through his union, filed a grievance on July 13, 2023,

seeking to address a In November 2022, an incident occurred where Supervisor Catherine Pimental made an inappropriate remark about Mr. Al Hamarneh, referring to his "Italian intimidating look."

20.     This comment was not only offensive but also discriminatory, undermining Mr. Al Hamarneh's national origin, family history, and background. Moreover, it perpetuated harmful racial and ethnic stereotypes, further demeaning Mr. Al Hamarneh. Understandably, Mr. Al Hamarneh was deeply troubled by this conduct, a reaction that should not surprise the Company. In response to this unacceptable behavior, Mr. Al Hamarneh, through his union, filed a grievance on July 13, 2023, seeking to address and rectify the situation.

21.     The sequence of events continued with a deeply unsettling episode in February of 2023, involving supervisor Sal Sanchez. Mr. Sanchez reprimanded Mr. Al Hamarneh for "meticulously documenting safety concerns about the plane prior to takeoff," and directed him to streamline his reporting as per the zone managers' directives. Mr. Al Hamarneh ensured his notes omitted no vital information.

22.     The situation escalated the following day when Mr. Al Hamarneh noticed that his previously criticized report format was being implemented by two other supervisors within the team's communication group chat. This adoption led to confusion and added to Mr. Al Hamarneh's frustration, prompting him to question the basis of the critique against his documentation style. If his approach was deemed unsuitable, why then was it emulated by others? This contradiction led Mr. Al Hamarneh to conclude that Sal Sanchez's disapproval was less a commentary on the quality of his work and more indicative of a broader pattern of discrimination and retaliation.

23.     Then, on March 1, 2023, UA overlooked the significance of Mr. Al Hamarneh's cultural and ethnic background in their decision to implement a mandatory training session on Israeli culture. This action was insensitive and discriminatory, given Mr. Al Hamarneh's deep

personal connections to the current conflict, a situation that has led to the tragic loss of over 50 of his family members. This lack of consideration for his personal experiences and cultural heritage raises serious concerns about cultural sensitivity and inclusiveness within the organization.

24.     Furthermore, the response from Ms. Erica Baldwin regarding his inquiries into whether the training might be reconsidered was unexpectedly aggressive. Such a reaction not only fails to address the initial concerns but also adds to the distressing nature of the situation, highlighting a need for more empathetic and understanding communication in dealing with such sensitive matters.

25.     In April of 2023, Mr. Al Hamarneh faced an unjust accusation from Mr. Sanchez. Mr. Sanchez issued a termination warning to Mr. Al Hamarneh, alleging he was late by six minutes to meet the flight scheduled on his shift. Contrary to this claim, Mr. Al Hamarneh was actually on the jet bridge in time, waiting for the plane's arrival, rendering the allegation completely unfounded. This erroneous accusation unfairly placed the blame on Mr. Al Hamarneh for what was, in reality, an error on the part of others.

26.     Mr. Al Hamarneh's union took action by filing a grievance against this unfair charge. However, as of the latest update, there has been no response to this grievance. This incident represents yet another form of harassment and retaliation, further exacerbating the already strained work environment that Mr. Hamarneh was subjected to. This incident not only challenged Mr. Al Hamarneh's professional integrity but also adds to the ongoing pattern of hostile and unjust treatment that he endured.

27.     The Subsequently, around August 2023, corporate security conducted an interview with Mr. Al Hamarneh regarding this incident involving Ms. Pimental's remark. The interview occurred in the presence of Annette Malkowski, the general manager, and Kimberly Beckford, a

union representative. After the investigation had concluded, Ms. Pimental admitted to making the discriminatory comment. While corporate security provided assurances that there would be no retaliation against Mr. Al Hamarneh for reporting the incident, it unfortunately marked the beginning of further retaliatory actions from associates of Ms. Pimental.

28.    In a subsequent development, Mr. Al Hamarneh was informed by his union representative, Vanessa Sanford, that Ms. Pimental faced disciplinary action. This action was taken not only because of the racially inappropriate comment against Mr. Al Hamarneh, but also due to multiple other issues associated with Ms. Pimental. This sequence of events highlights a serious and escalating workplace conflict, marked by initial discrimination, and followed by further complications.

29.    After returning to work from a Covid-related absence on July 19, 2023, Mr. Al Hamarneh was still contending with the lingering effects of post-Covid fatigue, a frequent consequence of the virus. In spite of his compromised health, he faced a severe reprimand from General Manager Annette Gadson for his shirt not being pressed to her standards. This reprimand took place in front of another supervisor, Juan Ortiz, and two additional supervisors, amplifying the embarrassment and stress Mr. Al Hamarneh experienced during this encounter.

30.    The situation deteriorated further a few months later, with Manager Annette Gadson once again singling out Mr. Al Hamarneh, this time for a minor stain on his jacket. This ongoing scrutiny and criticism from Ms. Gadson highlighted a pattern of retaliatory behavior against Mr. Al Hamarneh. Ms. Gadson's consistent and specific reprimands appeared to be part of a deliberate campaign to isolate and Mr. Al Hamarneh, thereby exacerbating the hostility of the work environment.

31.    In another incident involving Supervisor Bobbi Coulton, Mr. Al Hamarneh faced an unwarranted reprimand. He had dutifully informed the operations team via chat notes that a plane ready for departure was in an unsanitary state and vomit was present on board. Mr. Al Hamarneh described the conditions on the aircraft as "disgusting". His intention was to solicit maintenance to address and clean the mess quickly, ensuring a pleasant and hygienic environment for the passengers. Yet rather than recognizing the importance of a satisfactorily hygienic aircraft and the immediacy required by the situation, Ms. Coulton criticized Mr. Al Hamarneh for his choice of language, specifically his use of the term "disgusting" to characterize the condition of the vessel. Ms. Coulton even suggested adding a disciplinary note to Mr. Al Hamarneh's file over this issue, a measure that appeared disproportionate and unwarranted considering the context of his observation.

32.    Aware of the excessive severity of Ms. Coulton's proposed action, Mr. Al Hamarneh's union representative intervened, urging Ms. Coulton to reconsider her decision to issue a disciplinary letter. This intervention played a pivotal role in averting an unjust stain on Mr. Al Hamarneh's professional record, arising from what was essentially a candid and necessary report on the unsanitary condition of an aircraft. This episode further underscores the adversities Mr. Al Hamarneh encountered in a workplace where his well-meaning actions, consistent with his responsibilities, were subjected to undue criticism and scrutiny.

33.    On November 6, 2023, Mr. Al Hamarneh found himself in another unsettling situation with Ms. Coulton. While he was in the process of boarding passengers, Ms. Coulton instructed him to check in more carry-on luggage. Mr. Al Hamarneh dutifully complied before coming across a logistical challenge. When Mr. Al Hamarneh communicated the fact that he was running out of space for more baggage, Ms. Coulton responded not with assistance or

understanding, but with aggression. She sharply criticized him, called him a "prick," and insisted he comply with her orders, disregarding the practical difficulties he highlighted. Her confrontational stance intensified as she proceeded to reprimand Mr. Al Hamarneh publicly, continuing her verbal assault in the presence of onlookers, including the regional manager, Janet Burnett. This overt display of hostility and disrespect not only compromised Mr. Al Hamarneh's professional dignity but also contributed to cultivating a work environment marked by intimidation and hostility.

34.    Profoundly impacted by the overt harassment and discriminatory behavior he faced, Mr. Al Hamarneh took the pivotal step of filing a report with the Ethics and Compliance Department on November 27, 2023. His aim was to shed light on and seek redress for the inappropriate and unprofessional behavior he had endured. In a prompt response to his grievance, the Ethics Committee took decisive action on November 30, 2023, by appointing Laurie Leanne from their team to spearhead a comprehensive investigation into Mr. Al Hamarneh's complaints against Ms. Coulton. This initiative underscored a critical acknowledgment of the seriousness of Mr. Al Hamarneh's allegations and marked an essential move towards conducting a formal examination of the misconduct he reported.

35.    However, despite the inquiries promised by the Company, the disparate treatment of Mr. Al Hamarneh did not end there. On the morning of November 27, 2023, at approximately 6:50 am, Mr. Al Hamarneh was unexpectedly informed that Mr. Sanchez had scheduled him for two back-to-back flights, one at 7:22 am followed by another at 7:50 am. Viewing this scheduling as a potential effort by Mr. Sanchez to compromise his job performance, Mr. Al Hamarneh immediately addressed the issue through an email response. In his message, he affirmed his dedication to fulfilling both duties but underscored the technical challenge of making it to the

second flight on time if the first experienced any delays or required additional attention. Mr. Al Hamarneh further pointed out in his communication that being assigned consecutive shifts within such a tight timeframe amounted to an unjust labor practice, hinting at discriminatory intentions and that seemed to target him for harassment.

36.    In the meantime, on January 4, 2024, Mr. Al Hamarneh received communication from Ms. Leanne regarding the outcome of the investigation into his complaint against Ms. Coulton. Ms. Leanne informed him that the allegations he had raised were found to be partially substantiated. Furthermore, she assured Mr. Al Hamarneh that Ms. Coulton would face appropriate disciplinary action in response to these findings. However, as of the latest update, Mr. Al Hamarneh has not received any formal confirmation or details regarding the nature of the disciplinary measures taken against Ms. Coulton. Additionally, Ms. Coulton has not extended any form of apology or acknowledgment of her misconduct towards Mr. Al Hamarneh. This lack of closure and transparent follow-through on the matter has left Mr. Al Hamarneh with unresolved concerns about the efficacy of the internal processes in addressing such serious workplace issues.

37.    All of a sudden, on January 4th, 2024, Mr. Al Hamarneh received an unexpected summons to Mr. Calamusa's office. Aware of the gravity these meetings typically hold, he requested the presence of Ms. Sabrina Lewis, a shop steward, as support for the meeting. Upon entering the office, Mr. Calamusa, along with Supervisor Stacy Hunter, conveyed to Mr. Al Hamarneh of a seemingly random decision regarding his employment: "You are suspended for 30 days without pay. Please surrender your badges and work phone." This sudden proclamation caught Mr. Al Hamarneh by surprise, leaving him startled and concerned.

38.    Ms. Lewis, in her role as shop steward, immediately questioned the reason for this suspension. However, Mr. Calamusa did not provide any clear explanation. Despite Ms. Lewis's

attempts to gain further insight, Mr. Calamusa ended the meeting abruptly, dismissing them without offering any detailed explanation, a letter of clarification, or any disciplinary documentation.

39.     Feeling that this treatment was unfair and discriminatory, Mr. Al Hamarneh decided to take action. He wrote to Ethics and Compliance, detailing what he believed to be unfair labor practices and discrimination by Mr. Calamusa, including instances of retaliation. In his letter, Mr. Al Hamarneh described Mr. Calamusa's disrespectful and temperamental behavior. He highlighted a specific incident on November 13, 2023, where Mr. Calamusa assigned him a last-minute flight task right before his clock-in time. On January 19, 2024, Mr. Al Hamarneh received a response from the Ethics and Compliance stating that the department was not the appropriate place for his grievance.

40.     Mr. Al Hamarneh was forced to carry out his 30-day unpaid suspension, where he found himself grappling with a deep sense of hopelessness due to the discrimination and retaliation he received at work. The absence of a clear explanation from United for the suspension only compounded his distress. Each day, he felt and continues to struggle with the weight of injustice. The lack of support and answers from United have left him feeling isolated and wronged, with the suspension not just affecting him financially, but also casting a shadow over his professional reputation and personal well-being.

41.     After collaborating with a therapist to help him cope with the determinantal symptoms he faced as a result of his suspension and treatment by UA, Mr. Al Hamarneh submitted a letter of resignation on February 11, 2024 to HR Manager Ms. Eva Castillo. Approximately five hours later on the same day, Mr. Al Hamarneh received an email from Sevan Karabetian without any subject or briefing. The email contained only the scheduling of an IRM meeting, at which Mr.

Al Hamarneh was not given any explanation regarding his previous suspension or why an IRM meeting was needed.

42.    Mr. Al Hamarneh's due process rights under his employment contract were also violated, as there was no meeting ever scheduled to discuss his resignation under Article Nine. Instead, Ms. Castillo informed Mr. Al Hamarneh via email that in lieu of termination, she would accept his resignation. At no point was Mr. Al Hamarneh granted an explanation of his suspension. At no point was Mr. Al Hamarneh informed that he would be terminated after his suspension, nor was he given a reason why. Mr. Al Hamarneh maintains that there are several individuals in similar situations as him who were not scheduled for an IRM meeting, but as soon as he mentions resigning due to his mental health suffering from his treatment by UA, an IRM meeting is scheduled. Such treatment is yet another example of how UA continues to exercise poor judgment, unfair labor practices, and fails to consistently and fairly apply employee policies.

### b. Specific Issue Concerning Denied Promotions.

43.    Mr. Al Hamarneh attempted to elevate his career with UA at various points. During his tenure, Mr. Al Hamarneh applied three times over the course of April, June, and September of 2022 to join the airline's Ascend program, aiming to become a supervisor and further his career in the airline industry. Each application was submitted when his employment record was impeccable, devoid of any disciplinary actions or tardiness.

44.    He was eventually given the opportunity to interview, where he articulated his career aspirations at United Airlines with eloquence. Mr. Al Hamarneh emphasized his pride as an American, expressing his desire to see United Airlines, an iconic American brand, rank among the top 10 airlines globally. His dedication and work ethic were not only recognized but also

memorialized in writing by zone managers and several esteemed supervisors for his adherence to safety protocols and overall hard work.

45.    Despite these accolades and a strong performance in the interview, Mr. Al Hamarneh's attempts at career advancement were not successful. He later learned from a team leader, Ms. Trinidad Benitez, that he was highly regarded as one of the best customer service representatives and boarding agents in the company. Ms. Benitez highlighted Mr. Al Hamarneh's exceptional time management and organizational skills, which were also evident in an audit conducted by a mystery shopper, where he demonstrated outstanding performance.

46.    However, Ms. Benitez also shared a concerning insight: a retired supervisor, Suly Hernandez, appeared to have targeted Mr. Al Hamarneh, attempting to find reasons for disciplinary action and advising him to be cautious.

47.    We believe that Mr. Al Hamarneh's lack of promotion, despite his outstanding efforts and raving reviews from various staff members, represent further acts of discrimination and retaliation.

**c.    Emotional Distress, Mental Anguish & The Last Impact of Discrimination**

48.    Due to the discriminatory behavior, he encountered at the hands of his employers, Mr. Al Hamarneh frequently grapples with emotional distress. This ongoing situation has necessitated regular therapy sessions to help him manage his symptoms. Physically, he exhibits signs of emotional distress, including fatigue, headaches, heart palpitations, insomnia, and a decreased appetite. His emotional well-being is further impacted by a diminished interest in intimacy, feelings of discouragement, irritability, and pessimism. Additionally, Mr. Al Hamarneh struggles with cognitive impairments and difficulty concentrating. He experiences bouts of

depression, episodes of intense sadness and crying, and often feels overwhelmed by his circumstances.

## CAUSES OF ACTION

### AS A FIRST CAUSE OF ACTION
### (DISCRIMINATORY DISCHARGE IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §§ 10:5-1 et seq.)

49.    Plaintiff repeats every allegation made in the above paragraphs of this complaint.

50.    The NJLAD prohibits employers from discriminating against a person in compensation or in the terms and conditions of employment based on the person's race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, sexual orientation, genetic information, gender, gender identity, disability, nationality, military status, or atypical hereditary cellular or blood trait. See N.J.S.A. §§ 10:5-12(a). Moreover, it is illegal "for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J.S.A. § 10:5-12(e). New Jersey further "recognizes a cause of action premised upon perceived membership in [any] ... group" safeguarded by the NJLAD. *Cowher v. Carson &. Roberts*, 425 N.J. Super. 285, 290 (App. Div. 2012).

51.    Under the NJLAD, the plaintiff must establish a prima facie case of discrimination by showing he (1) is, or is perceived to be, a member of a protected class; (2) is qualified for the position; and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *Peper v. Princeton University*, 77 N.J. 55, 83 (1978); *Williams v. Pemberton Twp. Public Schools*, 323 N.J. Super., 490, 502 (App. Div. 1999). When it comes to the second element, the plaintiff must merely prove that he "was actually performing the job prior to the termination." *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 454 (2005).

52.    The plaintiff does not need to demonstrate that their protected characteristic was the sole factor motivating the defendant's behavior. It is sufficient to show that this characteristic was a contributing factor in the decision-making process and had a tangible impact on the outcome of the defendant's decision. *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 207 (1999).

53.    Mr. Al Hamarneh is a member of a protected class based on his racial and ethnic background (Palestinian). Second, Mr. Al Hamarneh was qualified for his position, which was evidenced by the positive feedback he received from other UA team members and by receiving a 100% compliance score on a Mystery Shopper audit. Prior to Mr. Al Hamarneh's resignation (a decision that UA made for him considering the circumstances, amounting to constructive termination as a result), Mr. Al Hamarneh's productivity was high and he was performing well, not having received any customer complaints.

54.    Third, as outlined above, Mr. Al Hamarneh experienced numerous and continuous adverse employment actions that resulted in Mr. Al Hamarneh having to resign for his own mental health, and for UA to accept his resignation "in lieu of termination."

55.    Finally, Mr. Al Hamarneh was, in effect, terminated under circumstances giving rise to an inference of discrimination because he did not experience majority of the adverse employment actions until immediately after Mr. Al Hamarneh alerted UA that he was Palestinian in response to the mandatory Israeli culture training. After Mr. Al Hamarneh shared this information, several acts of discrimination followed.

56.    As a result of Defendants' violations of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to his professional reputation; loss

of self-esteem; disruption to his personal life; and other harm, pain and suffering, both tangible and intangible.

*WHEREFORE*, Plaintiff, Fady Al Hamarneh demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

### SECOND CAUSE OF ACTION
### (HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §§ 10:5-1 et seq.)

57.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

58.     Under the NJLAD, hostile work environment harassment is also prohibited. Hostile work environment harassment occurs when an employee faces harassing treatment that would not have occurred if the employee was not a member of a protected class (in this case, race) and such treatment is so severe or pervasive that a reasonable person with the relevant protected characteristic would believe the conditions of the workplace are altered and the workplace environment is hostile and/or abusive. *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 603-04 (1993).

59.     Furthermore, employers are strictly liable for unlawful harassment committed by an employee's supervisor where the harassment culminates in a tangible employment action. *Lehman*, 132 N.J. at 593.

60.     Here, Defendants' conduct (1) occurred due to Plaintiff's legally protected characteristic (being of Palestinian descent); and (2) was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

61.    First, Ms. Pimental commented on Mr. Al Hamarneh's "intimidating Italian look" and was (allegedly) disciplined as a result. Such a comment, although factually inaccurate, demonstrates that if Mr. Al Hamarneh did not appear a certain way ethnically, he would not have faced harassment.

62.    Second, a reasonable individual in the same protected class as Mr. Al Hamarneh would view the examples of harassment and discrimination as outlined above would believe that such conduct was severe or pervasive enough to show altered employment conditions and an intimidating, hostile, or abusive work environment. Additionally, Defendants' hostile an abusive conduct resulted in adverse employment action: Mr. Al Hamarneh's constructive termination.

63.    Since the hostile work environment resulted in Mr. Al Hamarneh experiencing a "tangible employment action," which includes "discharge, demotion or undesirable reassignment," Defendants cannot raise an affirmative defense to his claims of employer vicarious liability based on delegation of authority. *Aguas v. State*, 220 N.J. 494, 537 (2015) citing *Burlington Industries v. Ellerth,* 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998).

64.    As a result of Defendants' violations of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to his professional reputation; loss of self-esteem; disruption to his personal life; and other harm, pain and suffering, both tangible and intangible.

*WHEREFORE*, Plaintiff, Fady Al Hamarneh demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential

damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

### THIRD CAUSE OF ACTION
### (RETALIATION IN VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION, N.J.S.A. §§ 10:5-1 et seq.)

65.    Plaintiff repeats every allegation made in the above paragraphs of this complaint.

66.    The NJLAD prohibits employers from retaliating against employees for engaging in "protected activity," such as complaining about, or protesting against, discrimination in the workplace. N.J.S.A. § 10:5-12(d).

67.    The term retaliation can include, but is not limited to, being discharged, demoted, not hired, not promoted or disciplined. In addition, many separate, but relatively minor, instances of behavior directed against the plaintiff may combine to make up a pattern of retaliatory behavior. *Nardello v. Twp. of Voorhees*, 377 N.J. Super. 428, 433-436 (App. Div. 2005); *Green v. Jersey City Bd. of Educ.*, 177 N.J. 434, 448 (2003).

68.    The plaintiff is not required to prove that his protected activity was the only motivation for the defendant's actions; rather, the plaintiff must only prove that his protected activity played a role in the decision and that it made an actual difference in the defendant's decision. *Donofry v. Autotote Systems, Inc.*, 350 N.J. Super. 276, 295 (App. Div. 2001) ("Plaintiff need not prove that his whistle-blowing activity was the only factor in the decision to fire him.") Kolb v. Burns, 320 N.J. Super. 467, 479 (App. Div. 1999) (burden on plaintiff is to show "retaliatory discrimination was more likely than not a determinative factor in the decision").

69.    First, Mr. Al Hamarneh engaged in protected activity when he filed grievances, or had union representation file grievances on his behalf, with UA for the incidents outlined above.

70.    Second, after the protected conduct of filing grievances took place, Mr. Al Hamarneh faced a pattern of retaliatory behavior, including, but not limited to, being placed on a month-long unpaid suspension that ultimately ended in constructive termination.

71.    Third, there were causal connections between Defendants' retaliation and Mr. Al Hamarneh's protected activity sufficient to show that his written grievances made an actual difference in Defendants' decision to discipline him. For example, on January 4, 2024, Mr. Al Hamarneh received word that his allegations against Ms. Coulton were found to be at least partially substantiated and Ms. Coulton was to be disciplined. The very same day, Mr. Al Hamarneh was placed on an unpaid suspension without any explanation or warning. A month later, Mr. Al Hamarneh faced constructive termination.

72.    As a result of Defendants' violations of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to his professional reputation; loss of self-esteem; disruption to his personal life; and other harm, pain and suffering, both tangible and intangible.

WHEREFORE, Plaintiff, Fady Al Hamarneh demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

## FOURTH CAUSE OF ACTION
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

73.    Plaintiff repeats every allegation made in the above paragraphs of this complaint.

74.     In New Jersey, Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72 (1980) created a common-law cause of action for at-will employees for wrongful discharge when the discharge is contrary to a clear mandate of public policy. "The sources of public policy include legislation, administrative rules, regulations or decisions, and judicial decisions." Id.

75.     The broadest possible interpretation of the public policy definition comes from those courts which have derived public policy from professional codes of ethics. *Pierce*, 84 N.J. at 72.

76.     Pierce claims have been recognized in situations where a termination is in violation of public policy, even where there is no complaint or refusal to participate in unlawful activities. See, e.g., *Velantzas v. Colgate-Palmolive Co. Inc.*, 109 N.J. 189 (1988) (holding employee states a Pierce claim when terminated for requesting to see personnel file for purposes of establishing discrimination).

77.     Whether there is a clear mandate of public policy prohibiting the conduct is a question for the trial judge. *Warthen v. Toms River Community Hospital*, 199 N.J. Super. 18, 25 (App. Div. 1985).

78.     Because Defendants' wrongfully terminated Plaintiff in violation of public policy, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to his business reputation; loss of self-esteem; disruption to his personal life; and other harm, pain and suffering, both tangible and intangible.

WHEREFORE, Plaintiff, Fady Al Hamarneh demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential

damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other

relief deemed equitable and just.

## FIFTH CAUSE OF ACTION
### (DEPRIVATION OF EQUAL PROTECTION RIGHTS IN VIOLATION OF THE NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A. §§ 10:6-1 et seq.)

79.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

80.     The NJCRA provides:

Any person who has been deprived of any substantive due process  or equal
protection rights, privileges or immunities secured by the Constitution or laws of
the United States, or any substantive rights, privileges or immunities secured by the
Constitution or laws of this State, or whose exercise or enjoyment of those
substantive rights, privileges or immunities has been interfered with or attempted
to be interfered with, by threats, intimidation or coercion by a person acting under
color of law, may bring a civil action for damages and for injunctive or other
appropriate relief. The penalty provided in subsection e. of this section shall be
applicable to a violation of this subsection. N.J.S.A. § 10:6-2(c).

81.     The NJCRA was "modeled off of the analogous Federal Civil Rights Act, 42 U.S.C.

§ 1983, and is intended to provide what Section 1983 does not: a remedy for the  violation of

substantive rights found in our State Constitution and laws." Tumpson v.  Farina, 218 N.J. 450,

474 (2014).

82.     Thus, the NJCRA "is construed nearly identically to Section 1983, such that the

definitions . . . under the two statutes have been interpreted in parallel." Endl v. New  Jersey, 5 F.

Supp. 3d 689, 697 (D.N.J. 2014).

83.     By the plain terms of the NJCRA, two—and only two—allegations are required to

state a cause of action under the statute: (1) that some person deprived the plaintiff of a  state right;

and (2) the person who deprived her of that right acted under color of state  law.

84.    Defendants and their employees and agents, acting under color of state law, violated Mr. Al Hamarneh's Equal Protection rights by discriminating and retaliating against her in the terms and conditions of her employment on the basis of his Palestinian origin.

85.    Moreover, Defendants and their employees and agents, acting under color of state law, attempted to violate Plaintiff's right to employment guaranteed by the New Jersey courts and legislature, through intimidation and coercion.

86.    Plaintiff hereby makes a claim against Defendants under all applicable provisions of the NJCRA.

87.    Due to Defendants' violations of the NJCRA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to his business reputation; loss of self-esteem; disruption to his personal life; and other harm, pain and suffering, both tangible and intangible.

WHEREFORE, Plaintiff, Fady Al Hamarneh demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

### SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

88.    Plaintiff repeats every allegation made in the above paragraphs of this complaint.

89.    To establish a "claim of intentional infliction of emotional distress, a plaintiff must prove: (1) that defendant acted intentionally or recklessly; (2) that defendant's conduct was extreme and outrageous; (3) that defendant's actions were the proximate cause of the plaintiff's distress;

and (4) that the emotional distress suffered by the plaintiff was severe." Hill v. N.J. Dep't of Corr. Com'r Fauver, 342 N.J. Super. 273, 297 (App. Div. 2001).

90.     First, as outlined above, the Defendants' engaged in invidious discrimination and harassment over a period of several months before Mr. Al Hamarneh was paced on unpaid suspension without explanation and subsequently constructively terminated.

91.     Second, Defendants' conduct was extreme and outrageous, as evidenced by the disciplinary actions taken against certain UA supervisors who engaged in discriminatory conduct and harassment against Mr. Al Hamarneh.

92.     Third, the Defendants' actions were the proximate cause of Plaintiff's distress because, but for such conduct, Mr. Al Hamarneh would not have suffered from emotional distress.

93.     Fourth, the emotional distress suffered by Plaintiff was so severe that he has had to undergo psychiatric treatment and was forced into constructive termination as a result of Defendants' actions against him.

94.     Due to Defendants' intentional infliction of emotional distress, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to his business reputation; loss of self-esteem; disruption to his personal life; and other harm, pain and suffering, both tangible and intangible.

WHEREFORE, Plaintiff, Fady Al Hamarneh demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

## SEVENTH CAUSE OF ACTION
## (DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIIVL RIGHTS ACT)

95.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

96.     At all relevant times hereto, Plaintiff was an "employee" within the meaning of Title VII, and Defendant was an "employer" within the meaning of Title VII.

97.     As outlined above, Defendant violated Title VII when it discriminated against Plaintiff by engaging in harassment and necessary discipline because of his race and national origin.

98.     Due to Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to his business reputation; loss of self-esteem; disruption to his personal life; and other harm, pain and suffering, both tangible and intangible.

WHEREFORE, Plaintiff, Fady Al Hamarneh demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

## EIGHTH CAUSE OF ACTION
## (HARASSMENT BASED ON RACE AND NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIIVL RIGHTS ACT)

99.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

100.    At all relevant times hereto, Plaintiff was an "employee" within the meaning of Title VII, and Defendant was an "employer" within the meaning of Title VII.

101.    As outlined above, Defendant violated Title VII when it subjected Plaintiff to a hostile work environment because of Plaintiff's race and national origin.

102.    Defendant is liable for the harassment that Plaintiff was subjected to during the course of Plaintiff's employment with Defendant because, because Plaintiff reported his concerns to Defendant and Defendant failed to take prompt remedial action in regards to the harassment he was facing in the workplace.

103.    As a direct and proximate result of Defendant's harassing conduct in violation of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to his business reputation; loss of self-esteem; disruption to his personal life; and other harm, pain and suffering, both tangible and intangible.

WHEREFORE, Plaintiff, Fady Al Hamarneh demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

## NINETH CAUSE OF ACTION
### (RETALIATION IN VIOLATION OF TITLE VII OF THE CIIVL RIGHTS ACT)

104.    Plaintiff repeats every allegation made in the above paragraphs of this complaint.

105.    At all relevant times hereto, Plaintiff was an "employee" within the meaning of Title VII, and Defendant was an "employer" within the meaning of Title VII.

106.    As outlined above, Defendant violated Title VII when it retaliated against Plaintiff by suspending Plaintiff for thirty days without pay and constructively terminating him without explanation because Plaintiff engaged in activity protected by Title VII.

107.    As a direct and proximate result of Defendant's retaliatory conduct in violation of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to his business reputation; loss of self-esteem; disruption to his personal life; and other harm, pain and suffering, both tangible and intangible.

WHEREFORE, Plaintiff, Fady Al Hamarneh demands judgment against Defendants, individually, jointly and severally, for compensatory damages, including past and future damages for pay, bonuses, personal days, overtime, benefits, and emotional distress; consequential damages; punitive damages; attorneys' fees; expert witness fees; costs of suit; interest; and all other relief deemed equitable and just.

## PRAYER FOR RELIEF

108.    WHEREFORE, Plaintiff requests that an award be issued in [his/her/their] favor providing the following relief:

a.  A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the laws of the United States and the state of New Jersey.

b.  An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

c.  An order directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

d.  An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages,

including, but not limited to, the loss of past and future income, wages, compensation, job security, and other benefits of employment;

e. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to Plaintiff's professional and personal reputation and loss of career fulfillment;

f. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

g. An award of punitive damages as a result of the serious harm caused on the Plaintiff, arising from the Defendants conduct;

h. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law; and

i. Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Pursuant to R. 1:8-1(b) and R. 4:25-1 of the New Jersey Court Rules, Plaintiff hereby demands a trial by jury on all issues so triable.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:4-1(c) and R. 4:25-4 of the New Jersey Court Rules, Vincent Miletti, Esquire is hereby designated as Trial Counsel for Plaintiff in connection with this litigation.

### CERTIFICATION OF OTHER ACTIONS AND PARTIES

Pursuant to R. 4:5-1(b) of the New Jersey Court Rules, the undersigned hereby certifies that the matter in controversy is not subject of any other action pending in court or of a pending

arbitration proceeding. The undersigned does not know of the names of any other parties who should be joined in the action or who are subject to joinder.

Respectfully Submitted,

Dated        March 22, 2024
             Astoria, New York

Vincent Miletti, Esq.
Miletti Law, P.C.
d/b/a The Law Firm of Vincent Miletti, Esq.
10 Halletts Point, Suite # 1742
Astoria, New York 11102
(609) 353-6287
VMiletti@Milettilaw.com
*Attorney for Plaintiff*

To           Bobbi Coulton
             *Atorney to be Noticed*

## CERTIFICATE OF SERVICE

I certify that this document is being filed through the Case Management / Electronic Case Filing (CM/ECF) system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). An electronic copy of the foregoing was sent via CM/ECF to all parties. Any counsel for other parties who are not registered participants is being served by first-class mail on the date of electronic filing.

Vincent Miletti, Esq.

## VERIFICATION

STATE OF NEW YORK    )
                     )
COUNTY OF <u>KINGS</u>    )

Mr. Fady Al Hamarneh hereby attests, affirms, verifies, deposes and says that he is the Plaintiff in this matter, that he has read the foregoing Verified Complaint and that he believes that the facts set forth therein are true and correct to the best of her knowledge, information, and belief. Mr. Fady Al Hamarneh's knowledge or information and belief are based on personal knowledge of the facts of this case.

_____
        MR. FADY AL HAMARNEH

Sworn to me, the undersigned, before

this <u>22</u> day of March, 2024.

_____
        NOTARY PUBLIC

VINCENT MILETTI, ESQ.
Notary Public - State of New York
No. 02MI6380051
Qualified in Kings County
My Commission Expires 09/10/2026



# New Jersey Judiciary
## Civil Practice Division
# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

| For Use by Clerk's Office Only | | | | |
|---|---|---|---|---|
| Payment type ☐ check<br>☐ charge<br>☑ cash | Charge/Check Number | Amount<br>$ | Overpayment<br>$ | Batch Number |

| Attorney/Pro Se Name<br>Vincent Miletti, Esq. | Telephone Number<br>(609) 353-6287  ext. | County of Venue<br>Essex |
|---|---|---|

| Firm Name (if applicable)<br>The Law Office of Vincent Miletti, Esq. | Docket Number (when available)<br>ESX-L-002050-24 |
|---|---|

| Office Address - Street<br>10 Halletts Point #1742 | City<br>Astoria | State<br>NY | Zip<br>11102 |
|---|---|---|---|

| Document Type<br>Verified Complaint | Jury Demand<br>■ Yes   ☐ No |
|---|---|

| Name of Party (e.g., John Doe, Plaintiff)<br>Fady Al Hamarneh | Caption  Fady Al Hamarneh v. United Airlines, Tony Calmusa, Eva Castillo, Sevan Karabetian, Cyrus Sarkari, Sal Sanchez, Ericka Baldwin, Anette Gadson, Bobbi Coulton, and Catherine Pimental |
|---|---|

Case Type Number (See page 3 for listing)   <u>618</u>

| Are sexual abuse claims alleged? | ☐ Yes | ■ No |
|---|---|---|
| Does this case involve claims related to COVID-19? | ☐ Yes | ■ No |
| Is this a professional malpractice case? | ☐ Yes | ■ No |

If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law
regarding your obligation to file an affidavit of merit.

| Related Cases Pending?<br>If "Yes," list docket numbers | ☐ Yes | ■ No |
|---|---|---|

| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | ☐ Yes | ■ No |
|---|---|---|

| Name of defendant's primary insurance company (if known) | ☐ None | ■ Unknown |
|---|---|---|

| The Information Provided on This Form Cannot be Introduced into Evidence. |
|---|

**Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation**

Do parties have a current, past or recurrent relationship?　☐ Yes　☐ No
　If "Yes," is that relationship:
　■ Employer/Employee　　☐ Friend/Neighbor　　☐ Familial　　☐ Business
　☐ Other (explain) _____

Does the statute governing this case provide for payment of fees　■ Yes　☐ No
by the losing party?

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.




Do you or your client need any disability accommodations?　☐ Yes　■ No
　If yes, please identify the requested accommodation:

Will an interpreter be needed?　　　　　　　　　　　　　☐ Yes　■ No
　If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature: *Vincent Milett, Esq.*

# Civil Case Information Statement (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES

(Choose one and enter number of case type in appropriate space on page 1.)

### Track I - 150 days discovery

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 999 | Other (briefly describe nature of action) |

### Track II - 300 days discovery

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | Tort – Other |

### Track III - 450 days discovery

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 617 | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

## Track IV - Active Case Management by Individual Judge / 450 days discovery

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |

## Multicounty Litigation (Track IV)

| | |
|---|---|
| 282 | Fosamax |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |
| 639 | Pinnacle Metal-on-Metal (MoM) Hip Implants |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

☐ **Putative Class Action**        ☐ **Title 59**                    ☐ **Consumer Fraud**

☐ **Medical Debt Claim**