## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FADY AL HAMARNEH,

      Plaintiff,

v.

UNITED AIRLINES, TONY
CALMUSA, EVA CASTILLO,
SEVAN KARABETIAN, CYRUS
SARKARI, SAL SANCHEZ,
ERICKA BALDWIN, ANETTE
GADSON, BOBBI COULTON, and
CATHERINE PIMENTAL,

      Defendants.

**Civil Action No. 24-05962 (JXN) (CLW)**

**OPINION**

**NEALS**, District Judge:

    This matter comes before the Court on Defendants United Airlines, Inc. ("United"), Tony Calmusa, and Eva Castillo's (collectively "Defendants") [1] motion to dismiss (ECF No. 11) Plaintiff Fady Al Harmaneh's ("Plaintiff") Complaint (ECF No. 1-1) ("Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Jurisdiction and venue are proper pursuant to pursuant to 28 U.S.C. §§1331, 1441(a), and § 1367, respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule. 78.1(b). For the reasons set forth below, Defendants motion to dismiss is **GRANTED**.

---

[1] On April 16, 2024, Plaintiff filed a stipulation of dismissal, dismissing with prejudice Defendants Sevan Karabetian, Cyrus Sarkari, Sal Sanchez, Ericka Baldwin, Anette Gadson, Bobbi Coulton, and Catherine Pimental. (ECF No. 1 ¶ 4 (citing Ex. C)).

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff brings this employment action, alleging various federal and state discrimination claims against Defendants.[2] In November 2021, Plaintiff began working at United as a Customer Service Representative. (Compl. ¶ 16).

In November 2022, after one year of employment, Plaintiff's supervisor, Catherine Pimental, made a remark about Plaintiff, referring to his "Italian intimidating look." (*Id.* at ¶ 19). Offended, Plaintiff filed a grievance through his union on July 13, 2023. (*Id.* ¶¶ 19-20).

In February 2023, Plaintiff alleges he was reprimanded by another supervisor, Sal Sanchez, for "meticulously documenting safety concerns about [a] plane." (*Id.* ¶¶ 21-22). The following day, Plaintiff "noticed that his previously criticized report format was being implemented by two other supervisors" which "prompt[ed him to question the basis of the critique . . . ." (*Id.* ¶ 22). Plaintiff concluded "that Sal Sanchez's disapproval was less a commentary on the quality of his work and more indicative of a broader pattern of discrimination and retaliation." (*Id.*).

On March 1, 2023, United implemented a mandatory training on Israeli culture in response to the unfolding conflict in the Middle East; Plaintiff claims that such action by United was "insensitive and discriminatory" against him as a Palestinian American. (*Id.* ¶ 23). Plaintiff inquired into whether "the training might be reconsidered," given that many of his family members had been killed in the conflict, to which he allegedly received an "unexpectedly aggressive" response from a United supervisor. (*Id.* ¶¶ 23-24).

In April of 2023, Plaintiff's strained relationship with his employer continued. Mr. Sanchez reprimanded Plaintiff for being "six minutes" late to his shift and issued a termination warning

---

[2] The following factual allegations are taken from the Amended Complaint that are accepted as true. *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010).

although Plaintiff asserts he was on time. (*Id.* ¶ 25). Plaintiff's union filed a grievance related to this incident, but as of the filing of the Complaint no response has been received. (*Id.* ¶ 26).

On July 19, 2023, Plaintiff returned to work after a bout with COVID-19, and despite still being fatigued, "faced a severe reprimand from General Manager Annette Gadson ("Gadson") for [Plaintiff's] shirt not being pressed to her standards[,]" which took place in front of other United supervisors and further "amplif[ied] [Plaintiff's] embarrassment and stress." (*Id.* ¶ 29).

In August 2023, United interviewed Plaintiff regarding Ms. Pimental's "intimidating Italian look" remark and was assured he would not be retaliated against for reporting the incident. (*Id.* ¶ 27). Ms. Pimental subsequently admitted to making the comment and was disciplined. (*Id.* ¶¶ 27-28).

Plaintiff had additional confrontational interactions with his supervisors at United, including *inter alia*, Plaintiff again being "singl[ed] out" by Gadson "for a minor stain on his jacket;" being criticized and nearly given "a disciplinary note" by supervisor Bobbi Coulton ("Coulton") for describing unsanitary conditions on an aircraft as "disgusting;" as well as allegedly being called a "prick" by Coulton while loading carry-on luggage. (*Id.* ¶¶ 30-33).

Subsequently, on November 27, 2023, Plaintiff filed a report with the Ethics and Compliance Department, and three days later on November 30, they initiated an investigation into Plaintiff's complaints against supervisor Bobby Coulton. (*Id.* ¶ 34). Plaintiff alleges United later found the interaction to be partially substantiated. (*Id.* ¶ 36).

Furthermore, on November 27, Ms. Pimental scheduled Plaintiff for two back-to-back flights "within . . . a tight timeframe," which Plaintiff alleges "hint[ed] at discriminatory intentions . . . that seemed to target him" and "amounted to an unjust labor practice." (*Id.* ¶¶ 34-35).

On January 4, 2024, Plaintiff was notified that Coulton would be disciplined. (*Id.* ¶ 36). That same day, Plaintiff was asked by Mr. Calamusa to come to his office, and was suspended for thirty days without pay, seemingly without reason. (*Id.* ¶ 37). "Feeling that this treatment was unfair and discriminatory," Plaintiff filed a complaint with Ethics and Compliance, and on January 19, 2024, received a response stating that the department was "not the appropriate place for his grievance." (*Id.* ¶ 39). During his suspension, Plaintiff alleges to have "found himself grappling with a deep sense of hopelessness" and began "collaborating with a therapist to help him cope." (*Id.* ¶¶ 40-41).

On February 11, 2024, Plaintiff submitted his resignation to United. (*Id.* ¶ 41).

Plaintiff claims that his "due process rights under his employment contract were violated." (*Id.* ¶ 42). Plaintiff also asserts concerns regarding supposedly denied promotions, which do not seem to be related to his claims against Defendants. (*Id.* ¶¶ 43-47). Plaintiff further claims that following these incidents he has exhibited many physical and emotional symptoms, including "fatigue, headaches, heart palpitations, insomnia, . . . a decreased appetite[,] a diminished interest in intimacy, feelings of discouragement, irritability, . . . pessimism[,] cognitive impairments[,] difficulty concentrating[,] bouts of depression, episodes of intense sadness and crying, and [feeling] overwhelmed by his circumstances." (*Id.* ¶ 48).

Prior to filing this suit, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue on March 1, 2024. (Compl. ¶ 15).

On March 22, 2024, Plaintiff filed his Complaint in the Superior Court of New Jersey, Law Division, Essex County. (*See generally* Compl.).

On May 9, 2024, United removed the case to this Court. (ECF No. 1).[3]

---

[3] As of the date of filing the Notice of Removal, Defendants Tony Calamusa, and Eva Castillo had not been served. (ECF No. 1 ¶ 3).

Plaintiff's claims include (1) discriminatory discharge under the New Jersey Law Against Discrimination ("NJLAD"); (2) hostile work environment under NJLAD; (3) retaliation under NJLAD; (4) wrongful termination in violation of public policy (a "*Pierce* claim"); (5) deprivation of Equal Protection rights under the New Jersey Civil Rights Act ("NJCRA"); (6) intentional infliction of emotional distress ("IIED"); (7) discrimination based on race and national origin under Title VII of the Civil Rights Act ("Title VII"); (8) "harassment" based on race and national origin under Title VII; and (9) retaliation under Title VII.

On July 18, 2024, Defendants moved to dismiss Plaintiff's complaint. ("Defs.' Br.") (ECF No. 11). On August 15, 2024, Plaintiff opposed. ("Pl.'s Br.") (ECF No. 15). On September 6, 2024, Defendant replied. ("Defs.' Br.") (ECF No. 16). This matter is now ripe for consideration.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)

Federal courts are courts of limited jurisdiction; the party seeking to invoke the court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) enables a party to move to dismiss a complaint for lack of subject matter jurisdiction. There are two types of standing challenges under Rule 12(b)(1): "either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). When considering a facial attack, the court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the plaintiff's favor. *See In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 633 (3d Cir. 2017). When considering a factual attack,

as here, the Court need not limit its inquiry to allegations in the complaint and may weigh and consider evidence outside the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### B. Rule 12(b)(6)

Rule 8 requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations and ellipses omitted). On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint is sufficient, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

## III.    DISCUSSION

### A. The Railway Labor Act Preempts Plaintiff's Discrimination and Retaliation Claims (Counts 1, 3, 7, and 9)

Before examining the merits of Plaintiff's claims, this Court must address whether Plaintiff's discrimination and retaliation claims are preempted by the Railway Labor Act ("RLA").

45 U.S.C. § 151 *et seq.* Defendants argue that the RLA prevents the Plaintiff from asserting NJLAD and Title VII discrimination and retaliation claims because those claims arise out of "disputes subject to the 'mandatory, exclusive, and comprehensive' jurisdiction" of the Plaintiff's Collective Bargaining Agreement ("CBA") grievance procedures. (Defs.' Br. at 35). If Defendants' assertion is correct, the RLA would deprive this Court of subject-matter jurisdiction of these claims. *See, e.g., Kennedy v. Am. Airlines Inc.*, 195 F. Supp. 3d 646, 654 (D.N.J. 2016) (quoting *Sierra v. Cont'l Airlines, Inc.*, No. 12-4368, 2013 WL 1222797, at *3 (D.N.J. Mar. 25, 2013)).

Indeed, Plaintiff, as a union employee of United Airlines, is subject to a CBA establishing terms and conditions of his employment, including the settlement of grievances. (*See generally* ECF No. 11-3).[4] "[T]he RLA created an arbitration scheme to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of labor agreements." *Kennedy*, 195 F. Supp. 3d at 653. The RLA categorizes labor disputes as either "major" or "minor," with minor disputes "involving the interpretation or application of existing labor agreements." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256 (1994). Minor disputes cannot be heard by district courts and must be resolved pursuant to the RLA's arbitration provisions. *See Kennedy*, 195 F. Supp. 3d at 653 (interpreting 45 U.S.C. § 151(a)).

"[A] federal claim that depends for its resolution on the interpretation of a CBA lacks independence from the CBA, and the RLA precludes it." *Stouffer v. Union R.R. Co.*, 85 F.4th 139, 144 (3d Cir. 2023) (quoting *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 702-03 (4th Cir. 2023)) (cleaned up). Similarly, state law claims that depend on interpretation of a CBA are preempted by the RLA. *See, e.g., Pa. Fed'n of Bhds. of Maint. of Way Emps. by Dodd v. Nat'l R.R.*

---

[4] The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

*Passenger Corp.*, 989 F.2d 112, 115 (3d Cir. 1993). Therefore, this Court must determine whether Plaintiff's claims can "be conclusively resolved by interpreting the existing agreement." *Stouffer*, 85 F4th at 144.

Plaintiff specifically states that his "due process rights under his employment contract were . . . violated, as there was no meeting ever scheduled to discuss his resignation under Article Nine" (Compl. ¶ 42). Plaintiff's Complaint also makes repeated reference to United improperly placing Plaintiff on "unpaid suspension." (*Id.* ¶¶ 70-71, 90). Additionally, the Complaint makes multiple references to grievances Plaintiff filed through his union, which is also dictated by Article 9 of the CBA; thus, both his discrimination and retaliation claims hinge on the application of his CBA. (*See, e.g.*, *Id.* at ¶¶ 19, 20, 26, 31, 34, 37, 39, 42, 43). Indeed, the parties disagree on how the CBA applies to Plaintiff's situation, and this Court would have to interpret the CBA to determine whether Plaintiff had been treated fairly under its terms. Thus, the District Court is not the correct venue for this action, and this case should be reviewed by the arbitral board. *See Stouffer*, 85 F.4th at 145-46 (stating claims are preempted by the RLA where the defendant "argue[s] . . . that the [carrier] violated the CBA, or that the CBA was improperly applied"); *see also Kennedy*, 195 F. Supp. 3d at 654 (quoting *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002)) ("[O]nly the arbitral boards convened under the aegis of the Railway Labor Act have the authority to determine the rights conferred by a [CBA] in the airline industry."). Accordingly, Counts One, Two, Three, and Seven are preempted by the RLA and are dismissed with prejudice.

The Court next addresses Plaintiff's claims that are not preempted by the RLA. Under New Jersey law, Plaintiff pleads an NJLAD hostile work environment claim, deprivation of Equal Protection rights under the NJCRA, and a common law IIED claim. Because these claims are "independent state law claims that do not require any interpretation of the CBA," this Court is not

divested of jurisdiction over them. *See Coelfield v. Jersey Cent. Power & Lighting Co.*, 532 F. Supp. 2d 685, 698 (D.N.J. 2007). Similarly, Plaintiff's VII claim based on race and national origin does not depend on interpretation of his CBA and thus, is not preempted. *See Stouffer*, 85 F.4th at 144.

### B. Plaintiff Fails to Plead NJLAD and Title VII Hostile Work Environment Claims (Counts 2 and 8)

Defendants move to dismiss Plaintiff's hostile work environment and "harassment" claims under NJLAD and Title VII. (Defs.' Br. at 15). Plaintiff separately pleads a claim of hostile work environment under NJLAD and of harassment based on race and national origin under Title VII. (Compl. ¶¶ 57-64, 99-103). As Defendants note, however, there is no general cause of action for "harassment" separate from hostile work environment under Title VII. (Def.'s Br. at 15 n.7). *See, e.g.*, *Castleberry v. STI Grp.*, 863 F.3d 259, 262-64 (3d Cir. 2017). Thus, this Court will construe Plaintiff's "harassment" claim as a claim of hostile work environment under Title VII.

"Because the hostile work environment analyses for Title VII claims and NJLAD claims are 'strikingly similar[,]' the Court will analyze both simultaneously." *Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 576 n.10 (D.N.J. 2005) (quoting *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005)); *see also Sgro v. Bloomberg L.P.*, 331 Fed. App'x 932, 941 (3d Cir. 2009) (citation omitted) ("New Jersey courts treat hostile work environment claims under the NJLAD the same as the Supreme Court treats hostile work environment actions under Title VII."). To succeed on a racial harassment claim based on hostile work environment, the Plaintiff must allege "that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." *Lee v. ElectrifAi, LLC*, No. 23-2239, 2024 WL 4182541, at *11 (D.N.J. Sept. 13, 2024)

(citation omitted); *see also Nuness v. Simon & Schuster, Inc.*, 221 F. Supp. 3d 596, 601 (3d Cir. 2016).

A plaintiff who cannot show that they suffered discrimination based on a protected trait cannot successfully plead a *prima facie* case of hostile work environment. *See, e.g., Alers v. City of Phila.*, 919 F. Supp. 2d 528, 546 (E.D. Pa. 2013). Here, Plaintiff has not plausibly alleged that any of the Defendants' alleged conduct was motivated by his race or national origin. Plaintiff's hostile work environment claims are solely based on the "Italian intimidating look" comment, and a company-wide training about Israeli culture. The other alleged incidents are various interpersonal conflicts with no connection to his race or national origin. Indeed, the comment referring to Plaintiff's "Italian intimidating look" (Compl. ¶ 19) was an isolated occurrence completely removed from the subsequent alleged incidences of harassment, which Plaintiff largely asserts arose from conduct related to his duties as an employee. (*Id.* at ¶¶ 21, 25, 29, 30, 33, 37). Moreover, the mandatory training on Israeli culture was a decision United Airlines made having nothing to do with Plaintiff or his heritage. (*Id.* at ¶ 23). Defendants did not specifically require Plaintiff to undergo this training *because* he is Palestinian. *See, e.g., Dalton v. New Jersey,* No. 17-4094, 2018 WL 305326, at *7 (D.N.J. Jan. 5, 2018) (dismissing gender discrimination claim where plaintiff failed to allege any facts supporting an inference that the alleged discriminatory conduct was . . . *because* of her gender) (emphasis in the original); *Lacy v. Nat'l R.R. Passenger Corp.*, 254 Fed. Appx. 934, 936 (3d Cir. 2007) (dismissing the plaintiff's hostile work environment claim, where the plaintiff "failed to show that she suffered intentional discrimination because of her race or sex . . . .").

Even if Plaintiff were to sufficiently allege racial harassment, Plaintiff fails to allege severe or pervasive conduct required to state a claim of hostile work environment. To determine whether

the conduct at issue is "severe or pervasive," the Court must consider "'the totality of the relevant circumstances,' including: '(1) the frequency of all the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.'" *Church v. Sears Holding Corp.*, 605 F. App'x 119, 125 (3d Cir. 2015) (quoting *Godrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1045 (N.J. 2008)).    The *"sine qua non* of a hostile work environment claim is a workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 240 (D.N.J. 2015) (internal quotation marks omitted).    *See also Nitkin v. Main Line Health*, 67 F. 4th 565, 570 (3d Cir. 2023) (To satisfy this standard "conduct must be extreme") (internal citation omitted); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013) ("To determine whether an environment is hostile, a court must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.") (internal quotation marks omitted); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (For discrimination to constitute severe or pervasive behavior, it must "alter the conditions of [the victim's] employment and create an abusive working environment.") (internal quotation marks omitted); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[s]imple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not" satisfy this element).

Additionally, plaintiffs typically cannot meet the severe or pervasive standard where they can only point to "one isolated incident" of discriminatory harassment. *See Nuness*, 221 F. Supp.

3d at 602-03; *see also Taylor v. Metzger*, 706 A.2d 685, 689 (N.J. Super. Ct. App. Div. 1985) ("[I]t will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable [person situated as the claimant], make the working environment hostile.").

Here, the "Italian intimidating look" comment does not meet the severe or pervasive standard. Although Plaintiff may consider the comment offensive, it is certainly not a racial epithet of sufficient severity, nor was it used with sufficient pervasiveness, to allow Plaintiff to overcome Defendants' motion to dismiss. *Nuness*, 221 F. Supp. 3d at 603. Anti-discrimination laws are not a "general civility code." *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *see also Koschoff v. Henderson*, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000), *aff'd sub nom. Koschoff v. Runyon*, 35 Fed. Appx. 357 (3d Cir. 2002) ("Verbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender (or membership in other protected groups)."). Consequently, the one isolated remark is insufficient to establish severe or pervasive conduct synonymous with a hostile work environment. *Nuness*, 221 F. Supp. 3d at 602-03 (outlining substantial caselaw in which courts in the Third Circuit have dismissed hostile work environment claims where racial epithets or otherwise offensive terms were used on only one occasion).

Moreover, the allegations, viewed in their totality, do not sufficiently show severe or pervasive conduct to establish a hostile work environment claim.[5] *See, e.g., Davis v. City of Newark*, 285 F. Appx. 899, 903 (3d Cir. 2008) (affirming the grant of defendant's motion to dismiss where the alleged harassing behavior was linked to "personality, temperament, and . . . other factors

---

[5] The Third Circuit has clarified that the proper standard is "severe *or* pervasive." *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017) (noting that precedent was inconsistent as to the proper standard for a hostile work environment claim) (emphasis in the original).

that tend to cause favor or disfavor between co-workers rather than racial issues"); *Peace-Wickham v. Walls*, 409 F. App'x 512, 520 (3d Cir. 2010) (reassignment, delay in resolution of complaints, ignoring complaints, refusal to allow breaks not severe or pervasive); *Buffa v. New Jersey State Dep't of Judiciary*, 56 F. App'x 571, 576 (3d Cir. 2003) (no harassment where employer targeted plaintiff for reprimand, repeatedly questioned plaintiff's need for time off due to disability, subjected her to "hostile" disciplinary proceedings for perceived unexcused absences); *Hanani v. State of New Jersey Dep't of Env't Prot.*, 205 F. App'x 71, 79 (3d Cir. 2006) (no harassment based on increased workload, conflicting edits to work, arguing with supervisor, alleged reduction in performance review). *See also Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 667 (3d Cir. 1999) (holding that although plaintiff and her supervisor's relationship was poor and her supervisor made some offensive comments, plaintiff had not presented any evidence that her supervisor harassed because of her protected class); *Koschoff v. Henderson*, 109 F. Supp. 2d 332, 346 (E.D. Pa.2000) ("mistreatment and disrespect unmotivated by the plaintiff's [statutorily-protected trait] does not create a hostile work environment"); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) ("[Plaintiff's] complaint is full of problems [he] experienced with [his] co-workers and supervisors. These facts, however, do not seem to have anything to do with [race or national origin] harassment."). Accordingly, Plaintiff's hostile work environment claims are dismissed without prejudice.

### C. Plaintiff's NJLAD Claim and the Railway Labor Act Preempt Plaintiff's *Pierce* Claim (Count 4)

Defendants next seek dismissal of Plaintiff's *Pierce* claim because it seeks to vindicate rights already protected under NJLAD and does not clearly identify the mandate of public policy that has been violated. (Def.'s Br. at 27-28). In *Pierce v. Ortho Pharma. Corp.*, the New Jersey Supreme court explained that "an employee has a cause of action for wrongful discharge when the

13

discharge is contrary to a clear mandate of public policy." 417 A.2d 505, 512 (N.J. 1980). "To establish a case for common law wrongful discharge [under *Pierce*], the employee must identify the clear mandate of public policy and that the discharge itself was in violation of that public policy." *Myers v. Advanced Stores Co.*, No. 19-cv-18183, 2020 WL 2744632, at *6 (D.N.J. May 27, 2020) (citing *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1183 (N.J. 2008)).

Importantly, "more is needed than simply the breach of public policy affecting a single person's rights to constitute the breach of a 'clear mandate' of public policy that *Pierce* requires." *Electrifai*, 2024 WL 4182541, at *7 (citing *Hennessey v. Coastal Eagle Point Oil Co.*, 609 A.2d 11, 19-20 (N.J. 1992)). A plaintiff must "prove not only that he or she complained about [an employer's] policy, but that his or her resulting discharge violated a clear mandate of public policy." *Id.* (quoting *Tartaglia*, 961 A.2d at 1184. "As such, '[i]f an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss or for summary judgment.'" *Id.* (quoting *Pierce*, 417 A.2d at 513).

As a threshold matter, there is no individual liability for a *Pierce* claim. *See Metzler v. Am. Transp. Grp., L.L.C.*, No. 07-2066, 2008 WL 413311, at *5 (D.N.J. Feb. 13, 2008) ("A plaintiff is only able to maintain a *Pierce* cause of action against his or her employer—not against individual employees.") (citation omitted). Thus, the *Pierce* wrongful discharge claim against the individual defendants is dismissed with prejudice. *Electrifai*, 2024 WL 4182541, at *7.

As for United, Plaintiff makes no specific allegation that any particular area of public policy was purportedly breached, but rather asserts generally that it is "a question for the trial judge" whether such a breach has occurred. (Compl. ¶ 77). Notwithstanding Plaintiff's failure to allege any public policy—let alone one that is clearly mandated—Plaintiff appears to be barred from raising a *Pierce* claim, as "[c]ourts [have] consistently held the NJLAD to preempt

14

duplicative common law discrimination claims." *Sturm v. UAL Corp.*, 1998 WL 784615, at *10 (D.N.J. Oct. 8, 1998). Thus, Plaintiff's *Pierce* claim is preempted by his NJLAD claim. *See Bosshard v. Hackensack Univ. Med. Ctr.*, 783 A.2d 731, 738 (N.J. Super. Ct. App. Div. 2001) (dismissing *Pierce* claim "because it does not seek to vindicate interests independent of those protected by the [NJ]LAD"). As such, Plaintiff's *Pierce* claim against United is dismissed with prejudice.[6] Accordingly, Count Four is dismissed with prejudice.

### D. Plaintiff Cannot Bring an NJCRA Deprivation of Equal Protection Claim (Count 5)

Plaintiff next argues that Defendants violated his Equal Protection rights under the NJCRA. (ECF No. 1-1 at 21-22.) The NJCRA was modeled after 42 U.S.C. § 1983, the Civil Rights Act, and state courts "look[] to federal civil rights law" when construing the NJCRA. *Mansour v. City of Jersey City*, No. 24-cv-6178, 2024 WL 5301742, at *5 (D.N.J. Dec. 20, 2024). To establish a claim under the NJCRA, "Plaintiffs must demonstrate that (1) the Constitution or the laws of [New Jersey] conferred on them a substantive right; (2) the Defendants deprived them of that right; and (3) the Defendants were acting under color of law when they did so." *Id.* at *4 (cleaned up).

However, Plaintiff, is unable to raise an NJCRA claim at all. In *Perez v. Zagami, LLC*, the New Jersey Supreme Court examined whether "the [New Jersey] Legislature intended that the [NJCRA] permit a private right of action to be brought against a person who is not acting under 'color of law.'" 94 A.3d 869, 870 (N.J. 2014) (interpreting N.J.S.A. 10:6-2(c)). In that case, the plaintiff filed a complaint against his employer for malicious use of process because the employer sued him for defamation; that action followed plaintiff's testimony at a liquor license proceeding that, *inter alia*, the employer served alcohol to minors. *See Perez*, 94 A.3d at 870-71. The plaintiff

---

[6] However, Plaintiff's *Pierce* claim would be dismissed without prejudice if it were not otherwise preempted. *See Electrifai*, 2024 WL 4182541, at *7.

attempted to add an NJCRA claim, but the Superior Court concluded that, since the NJCRA was modeled after § 1983, it "only authorized private suits against persons acting under color of law." *Id.* at 871. After a lengthy exercise in statutory construction hinging on the placement of a comma in the NJCRA's text, the New Jersey Supreme Court agreed with the Superior Court, holding that while the NJCRA "authorizes the [state] Attorney General to bring [NJ]CRA actions against persons, whether or not acting under color of law," private individuals are not able to do so. *Id.* at 877. Thus, since Defendants are private actors, including a corporation, who are not "willful participant[s] in joint activity with the State or its agents," the Supreme Court has found that they were *not* acting under color of law. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)) (defining when private parties are acting "under color of law"). Accordingly, Plaintiff's NJCRA claim is dismissed with prejudice.

### E. Plaintiff Fails to Plead an Intentional Infliction of Emotional Distress Claim (Count 6)

Defendant further argues that Plaintiff fails to allege sufficient facts to establish his IIED claim because, *inter alia*, "Plaintiff has not alleged that Defendants engaged in any conduct that is 'beyond all possible bounds of decency.'" (Def.'s Br. at 30). To establish a *prima facie* claim of IIED under New Jersey state law, the plaintiff must show "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). "New Jersey courts have found that the emotional distress must meet an 'elevated threshold' which is only satisfied in 'extreme cases.'" *Sebastian v. Vorhees Twp.*, No. 08-6097, 2011 WL 540301, at *8

(D.N.J. Feb. 8, 2011) (quoting *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296 (N.J. Super. Ct. App. Div. 2001)).

Here, Plaintiff fails to plead the requisite elements for an IIED claim. First, Plaintiff makes no allegation that any of the Defendants intended to cause emotional distress by their actions. (*See generally* Compl.). Second, the Plaintiff has not alleged any facts that are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *ElectrifAi*, 2024 WL 4182541, at *13 (quoting *Buckley*, 544 A.2d at 863). Indeed, while the alleged conduct against Plaintiff may be considered unfair, it does not rise to the heightened standard required by New Jersey law. *See id.* As to the third and fourth elements of an IIED claim, although Plaintiff has stated that the Defendants' conduct caused him emotional distress (Compl. ¶ 48), the consequences of the distress are hardly "so severe that no reasonable man could be expected to endure [them]." *ElectrifAi*, 2024 WL 4182541, at *13 (quoting *Buckley*, 544 A.2d at 863). Plaintiff simply alleges that his emotional distress has required him to undergo psychiatric counseling, a common consequence of mental strife that is, in fact, endured by countless people every day. (Compl. ¶ 93). Accordingly, Plaintiff's IIED claim is dismissed without prejudice.

## IV.    **CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 11) Plaintiff's Complaint (ECF No. 1-1) is **GRANTED**. An appropriate Order accompanies this Opinion.

DATED: March 31, 2025

**JULIEN XAVIER NEALS**
United States District Judge