UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FADY AL HAMARNEH,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 24-5962 (JXN)(CF)<br><br>**OPINION** |

**NEALS**, District Judge

　　Plaintiff Fady Al Hamarneh ("Plaintiff") sued his former employer, United Airlines ("United"), and supervisors Tony Calamusa ("Calamusa") and Eva Castillo ("Castillo") (collectively, "Defendants"), for allegedly creating a work environment hostile to Palestinians, Arabs, and Muslims. Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint under Federal Rules of Civil Procedure[1] 12(b)(1) and 12(b)(6). (ECF No. 26.) Plaintiff opposed (ECF No. 30) and Defendants replied (ECF No. 31). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

**I.　BACKGROUND**

　　**A.　Statement of Facts**

　　Plaintiff, a Palestinian, Arab, and Muslim man, worked for United as a customer service representative from 2021 to 2024. (Am. Compl. ¶¶ 14–15, ECF No. 20.) During his employment, Plaintiff alleges United and its supervisors discriminated against him based on his nationality,

---

[1] "Rule" or "Rules" hereinafter refers to the Federal Rules of Civil Procedure.

ethnicity, and religion. (*Id.* ¶ 19.) The alleged discrimination started in November 2022, when a supervisor told Plaintiff he had an "Italian intimidating look." (*Id.* ¶ 23.) Plaintiff claims he reported the incident to management and his union, but they did nothing. (*Id.*) The next incident occurred in February 2023, when supervisor Sal Sanchez ("Sanchez") reprimanded Plaintiff for how he documented safety concerns. (*Id.* ¶ 24.) The next day, however, other supervisors in a "team group chat adopted the same reporting format [Plaintiff] had been criticized for." (*Id.*)

On March 1, 2023, United held a "cultural training focused on Israeli culture." (*Id.* ¶ 25.) Plaintiff found this "profoundly traumatic," having lost fifty family members in the Israeli Palestinian conflict. (*Id.*) Plaintiff asked a supervisor for an exemption, given "his discomfort and cultural distress," but the supervisor allegedly reacted "with hostility." (*Id.* ¶ 26.)

The following month, Plaintiff claims Sanchez falsely accused him "of being six minutes late to meet a flight." (*Id.* ¶ 28.) This incident occurred during Ramadan, "when [Plaintiff] was fasting and observing religious practices." (*Id.*) United later issued Plaintiff a termination warning. (*Id.*) During Ramadan, Plaintiff claims he was often "assigned to schedules that would force him to work during [a] time of day in which he required a moment for prayers." (*Id.* ¶ 29.) Plaintiff alleges he "requested a reasonable accommodation for his closely held religious practices and values," which United management ignored. (*Id.* ¶ 29.)

Also in April 2023, Plaintiff alleges other employees "criticized [him] for 'writing too much' in team chat threads and reporting concerns in detail." (*Id.* ¶ 30.) However, according to Plaintiff, non-Palestinian, non-Arab, or non-Muslim employees who wrote similarly long messages were not criticized. (*Id.*) Plaintiff purportedly filed grievances over the termination warning and group-chat-criticism with United and his union, but neither acted. (*Id.* ¶ 31.)

2

Around this time, Plaintiff alleges a United passenger called him a "derogatory term" after he "enforced standard carry-on luggage restrictions." (*Id.* ¶ 34.) Plaintiff claims he reported the incident to a supervisor, though United took no action against the passenger. (*Id.*)

In July 2023, Plaintiff alleges a general manager "chastised him in front of several supervisors for not having a pressed shirt," "ridiculed him over a minor stain on his jacket," and "called him dirty and accused him of poor hygiene." (*Id.* ¶ 37.) Plaintiff claims the remarks "invoked harmful stereotypes about Arabs and Muslims being unclean and uncivilized," and "[s]uch insults were never levied at non-Arabic, non-Palestinian or non-Muslim employees." (*Id.*)

In a separate incident, Plaintiff described the conditions on a plane as "disgusting" in his team group chat. (*Id.* ¶ 38.) Supervisor Bobbi Coulton ("Coulton") apparently threatened to discipline Plaintiff for using the word "disgusting." (*Id.*) And, in November 2023, Coulton allegedly called Plaintiff a "prick" in front of passengers and management after he "flagged a lack of space for additional carry-on baggage." (*Id.* ¶ 39.) Plaintiff filed a formal complaint with United's Ethics and Compliance Department about Coulton's conduct. (*Id.* ¶ 40.) Later that day, Sanchez "scheduled Plaintiff to work two flights back-to-back with just [twenty-eight] minutes between departures," a decision Plaintiff claims was deliberate sabotage. (*Id.*) In January 2024, Plaintiff alleges the Ethics and Compliance Department "informed Plaintiff that his allegations against [Coulton] were substantiated and promised disciplinary action." (*Id.* ¶ 41.) Yet according to Plaintiff, no disciplinary action occurred. (*Id.*) Plaintiff also claims he was denied a promotion into United's "Ascend program, a professional development initiative designed to promote promising employees into supervisory roles." (*Id.* ¶¶ 62–65.)

On January 4, 2024, Plaintiff alleges supervisor Calamusa suddenly informed Plaintiff "he was being suspended for 30 days without pay." (*Id.* ¶ 42.) Plaintiff avers he was denied due process

3

under his union contract. (*Id.*) Plaintiff wrote to Ethics and Compliance about Calamusa's perceived "hostility," (*id.* ¶ 43), but United "responded that Ethics and Compliance was not the correct forum for the complaint," (*id.* ¶ 45). During the suspension, Plaintiff states he developed anxiety and depression. (*Id.* ¶¶ 46–47.) On February 11, 2024, Plaintiff resigned, which human resources manager Castillo accepted "in lieu of termination." (*Id.* ¶¶ 51–52.)

### B.  Procedural History

In March 2024, Plaintiff sued United and nine supervisors in New Jersey Superior Court for: (1) intentional discrimination, hostile work environment, and retaliation, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; (2) wrongful termination in violation of public policy under *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72 (1980); (3) deprivation of equal protection, in violation of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1; and (4) intentional infliction of emotional distress ("IIED"). (*See* Compl., ECF No. 1-1.)

All the supervisors, except Calamusa and Castillo (collectively "Individual Defendants"), were voluntarily dismissed. (*See* Notice of Removal, ECF No. 1.) Defendants timely removed to this Court, (*id.*), and moved to dismiss the Complaint, (*see* First Mot. to Dismiss, ECF No. 11).

The Court dismissed the Complaint in March 2025. First, the Court held the Railway and Labor Act ("RLA"), 45 U.S.C. § 151, preempted Plaintiff's intentional discrimination and retaliation claims. (*See* Op. at 6–9, ECF No. 17.) The Court observed the RLA deprives federal courts of jurisdiction over employment disputes involving the application or interpretation of a collective bargaining agreement ("CBA"). (*Id.* at 7.) The Court noted Plaintiff, a union employee, repeatedly referenced his CBA and union grievances. (*Id.*) The Court found "the parties disagree on how the CBA applies to Plaintiff's situation, and this Court would have to interpret the CBA to

determine whether Plaintiff had been treated fairly under its terms." (*Id.* at 8.) The Court thus concluded the RLA preempted Plaintiff's discrimination and retaliation claims, which the Court dismissed with prejudice. The Court also dismissed Plaintiff's *Pierce* claim with prejudice as preempted by the NJLAD and RLA. (*Id.* at 13–15.)

The Court concluded the RLA did not preempt Plaintiff's claims that did not require the Court to interpret the CBA. (*Id.* at 8–9.) However, the Court dismissed Plaintiff's hostile work environment claims without prejudice, remarking:

> Plaintiff has not plausibly alleged that any of the Defendants' alleged conduct was motivated by his race or national origin. Plaintiff's hostile work environment claims are solely based on the "Italian intimidating look" comment, and a company-wide training about Israeli culture. The other alleged incidents are various interpersonal conflicts with no connection to his race or national origin.

(*Id.* at 10.) Nevertheless, the Court found Plaintiff did not adequately allege severe or pervasive conduct. (*Id.* at 10–13.)

The Court then dismissed Plaintiff's NJCRA claim with prejudice because Defendants were private actors not subject to the Act. (*Id.* at 15–16.) Finally, the Court dismissed Plaintiff's IIED claim for failure to state a claim. (*Id.* at 16.)

Plaintiff filed an Amended Complaint that includes claims for a hostile work environment based on Plaintiff's race, national origin, and religion, in violation of NJLAD and Title VII (Counts I and II, respectively), and IIED (Count III). (*Id.* ¶¶ 96–124.) It also provides new allegations of discrimination. Plaintiff, for instance, claims: "Muslim employees who posted support for Palestine on social media . . . were subjected to harsh disciplinary actions," (*id.* ¶ 54); "a Muslim family was removed from a flight because a passenger requested an unopened can of soda, even though a nearby passenger received a closed beer can," (*id.*); an employee who wore a white scarf with black airplanes was reprimanded, (*id.* ¶ 55); "passengers with names like 'Muhammad' or

5

'Abdel' were routinely flagged and denied check-in," (*id.* ¶ 56); and "every flight to Detroit, Michigan was staffed with two Federal Air Marshals, reflecting an institutional presumption that Arab and Muslim travelers posed security threats," (*id.*). Plaintiff also claims other employees texted their union representative about threats of discipline. (*Id.* ¶ 93.)

Defendants argue the RLA preempts Plaintiff's hostile work environment claims because the Amended Complaint repeatedly references grievances, disciplinary proceedings, and labor practices under the CBA. (Second Mot. to Dismiss at 10–15, ECF No. 26.) Defendants further argue that even if the hostile work environment claims are not preempted, Plaintiff still fails to state claims for a hostile work environment or IIED. (*Id.* at 16–18.) Moreover, to the extent Plaintiff newly alleges a hostile work environment based on religion, Defendants argue he has failed to exhaust his administrative remedies. (*Id.* at 25–27.) Defendants also contend that Plaintiffs failed to properly serve the Individual Defendants. (*Id.* at 32–35.) Plaintiff opposed, (Pl.'s Opp'n, ECF No. 30), and Defendants replied (Defs.' Reply, ECF No. 31).

## II.  LEGAL STANDARD

### A.  Rule 12(b)(1)

"A party can move to dismiss for lack of subject matter jurisdiction at any time." *Bosco v. Compass Grp. USA, Inc.*, No. 22-6909, 2025 WL 1742657, at *2 (D.N.J. June 23, 2025). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir.2009)). A facial attack argues the Court lacks jurisdiction based on the face of the claim. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In a facial attack, the Court construes the facts alleged in the complaint in a light most favorable to the non-moving party. *Id.* A factual attack argues the Court lacks subject matter jurisdiction

6

based on facts related to the case. *Id.* In a factual attack, the Court may look beyond the facts alleged in the pleading. *Id.*

### B. Rule 12(b)(6)

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

#### A. The RLA Does Not Preempt Plaintiff's Hostile Work Environment Claims

Plaintiff is a union employee subject to a CBA, "which establishes the terms and conditions of [his] employment." *Stouffer v. Union R.R. Co., LLC*, 85 F.4th 139, 143 (3d Cir. 2023). "The

7

RLA establishes arbitration boards which have exclusive jurisdiction to resolve disputes over the interpretation or application of CBAs in the railroad [and airline] industry." *Id*; *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994) (noting the RLA "was extended in 1936 to cover the airline industry."). Where an RLA arbitration board has jurisdiction, the Court does not.

The RLA requires mandatory arbitration of major and minor disputes. *Stouffer*, 85 F.4th at 143–44 (quoting *Norris*, 512 U.S. at 252). "Major disputes relate to the formation of CBAs." *Id.* at 144. Minor disputes arise "out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Norris*, 512 U.S. at 252–53 (quoting 45 U.S.C. § 151a). Put simply, "major disputes seek to create contractual rights, minor disputes to enforce them." *Stouffer*, 85 F.4th at 144 (quoting *Norris*, 512 U.S. at 253).

The "distinguishing feature" of a minor dispute is that it "may be conclusively resolved by interpreting the existing agreement." *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 305 (1989). "It is not enough to point to sections of the CBA that may be relevant." *Stouffer*, 85 F.4th at 146. Moreover, "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" *Norris*, 512 U.S. at 261 (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)). Likewise, the RLA "does not pre-empt causes of action to enforce rights that are independent of the CBA." *Id.* at 256.

Here, the RLA does not preempt Plaintiff's hostile work environment claims because they "stem from a federal [and state] statute, not the CBA itself." *Stouffer*, 85 F.4th at 145. *See also Perry v. United Parcel Serv.*, No. 21-11028, 2024 WL 939642, at *4 (D.N.J. Mar. 5, 2024) (concluding RLA did not preempt right to be free from hostile work environment). Nor can the CBA conclusively resolve Plaintiff's hostile work environment claims. Instead, the claims turn on

8

"purely factual questions" about Defendants' conduct and motives. *Norris*, 512 U.S. at 261. Thus, the RLA does not preclude jurisdiction over Plaintiff's hostile work environment claims.

    **B.**    **Plaintiff Fails to State a Claim**

        *i.*    ***The Individual Defendants***

At the threshold, the Court considers whether Plaintiff can bring Title VII and NJLAD claims against the Individual Defendants. Title VII provides, in relevant part:

It shall be an unlawful employment practice for an *employer*—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. § 2000e–2(a) (emphasis added). An employer is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). The Third Circuit has held that individual employees are not "employers" within the statute and, therefore, "cannot be held liable under Title VII." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996). Accordingly, Plaintiff's Title VII claims against the Individual Defendants are **dismissed** *with prejudice*.

The NJLAD likewise "prohibits unlawful employment practices and discrimination by an employer." *O'Toole v. Tofutti Brands, Inc.*, 203 F. Supp. 3d 458, 467 (D.N.J. 2016) (citing *Tarr v. Ciasulli*, 181 N.J. 70, 83 (N.J. 2004)). An employer "includes one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries." N.J.S.A. 10:5–5(a), (e). "The definition of employer does not include an individual supervisor." *O'Toole*, 203 F. Supp. 3d at 467 (citing *Tarr*, 181 N.J. at 83). "Instead, individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the 'aiding and abetting'

9

mechanism that applies to 'any person.'" *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 594 (2008) (quoting N.J.S.A. 10:5–12(e)).

The NJLAD makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J.S.A. 10:5-12(e). Aiding and abetting "require[s] active and purposeful conduct." *Tarr*, 181 N.J. at 83. To hold an individual employee liable as an aider or abettor, Plaintiff must show:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation.

*Id.* at 84 (alteration in original) (quoting *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)).

Plaintiff fails to state a claim for aiding-and-abetting liability. For one, the Amended Complaint does not specifically plead aiding-and-abetting liability. The Court can dismiss Plaintiff's NJLAD claims against the Individual Defendants on this basis alone. *See Mahmoud v. Canon Sols. Am., Inc.*, No. 21-11935, 2021 WL 6197422, at *4 (D.N.J. Dec. 22, 2021) (collecting cases where NJLAD claims dismissed for failure to plead aiding-and-abetting liability). In any event, the Amended Complaint offers no facts from which the Court could find aider-and-abettor liability. Plaintiff alleges only that (1) Calamusa informed Plaintiff he was suspended for thirty days, (Am. Compl. ¶ 42), and (2) Castillo accepted Plaintiff's resignation in lieu of termination, (*id.* ¶ 52). Plaintiff does not adequately allege that either Individual Defendant was aware of their part in an overall scheme to harass Plaintiff, or that they knowingly or substantially assisted in such a scheme. Nor does Plaintiff plausibly assert that either Individual Defendant acted *because*

10

of Plaintiff's protected characteristics. Accordingly, the Court **dismisses *without prejudice*** Plaintiff's NJLAD claims against the Individual Defendants.

### ii. *Hostile Work Environment*

"Because the hostile work environment analyses for Title VII claims and NJLAD claims are "strikingly similar" the Court will analyze both simultaneously." *Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 576 n.10 (D.N.J. 2005) (quoting *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005)). To state a hostile work environment claim under either Title VII or NJLAD, Plaintiff must show the complained-of conduct "(1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and the working environment is hostile or abusive." *Rich v. State*, 294 F. Supp. 3d 266, 281 (D.N.J. 2018) (quoting *Shepherd v. Hunterdon Dev. Ctr.*, 174 N.J. 1, 24 (1993)). "A viable hostile environment claim stems from extremely insensitive conduct against the protected person so egregious that it alters the conditions of employment and destroys the person's equal opportunity in the workplace." *Id.* (quoting *Jackson v. Gannett Co.*, No. 08-6403, 2011 WL 3362154, at *5 (D.N.J. Aug. 3, 2011)).

### a. Causation

Plaintiff must prove the complained-of conduct "would not have occurred but for" his national origin, ethnicity, or religion. *Rich*, 294 F. Supp. 3d at 281. Plaintiff need only show "it is more likely than not that the harassment occurred because of" their protected characteristics. *Williams v. Hershey Co.*, No. 20-9394, 2021 WL 1686568, at *3 (D.N.J. Apr. 29, 2021) (quoting *Velez v. Rocktenn Co.*, 2018 WL 3613393, at *6 (N.J. Super. Ct. App. Div. July 30, 2018)). "Sometimes, the but-for causation element may be established by the nature of the harassment itself." *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 594 (D.N.J. 2015). For instance, "an

allegation of racial harassment may be found adequate where it is based on racist, or at least racial, comments or epithets." *Id.* In other cases, "the but-for causation element may be established by temporal proximity—for example, protected conduct that is closely followed by an adverse action." *Id.* In all cases, however, "there needs to be some allegation that demonstrates the requisite discriminatory tinge" to connect the harassment to the protected characteristic. *Williams*, 2021 WL 1686568, at *4.

The Amended Complaint does not adequately connect the harassment Plaintiff alleges to his national origin, race, or religion. As before, Plaintiff's claims are based solely on the "Italian intimidating look" comment, the Israeli cultural training, interactions stemming from interpersonal conflicts, and incidents arising from his duties as an employee. (*See* Am. Compl.) None of those events, however, have any apparent connection to his national origin, ethnicity, or religion. As the Court previously noted, the "Italian intimidating look" comment "was an isolated occurrence completely removed from the subsequent alleged incidences of harassment," which began a year later. *Hamarneh v. United Airlines*, No. 24-5962, 2025 WL 957421, at *5 (D.N.J. Mar. 31, 2025). Likewise, the "the mandatory training on Israeli culture was a decision United Airlines made having nothing to do with Plaintiff or his heritage." *Id.* "Defendants did not specifically require Plaintiff to undergo this training *because* he is Palestinian." *Id.* Nor does Plaintiff plausibly allege Defendants refused to exempt him from the training because he is Palestinian, Arab, or Muslim. The remaining incidents implicate Plaintiff's job duties, "personality, temperament, and the other various factors that tend to cause favor or disfavor between co-workers rather than [bigotry]." *Davis v. City of Newark*, 285 F. App'x 899, 903 (3d Cir. 2008).

To bridge the gap between the alleged harassment and protected characteristics, the Amended Complaint relies on conclusory attorney argument. For instance, Plaintiff now alleges

12

the "Italian" comment was "a coded expression of bias against his Arabic features and Muslim identity" (Am. Compl. ¶ 23), and the reprimand over his stained jacket "invoked harmful stereotypes about Arabs and Muslims being unclean and uncivilized." (*Id.* ¶ 37). This is unavailing. Plaintiff "cannot sustain a claim simply by asserting an event and then asserting that it was motivated by [anti-Palestinian, Arab, or Muslim] bias." *Davis*, 285 F. App'x at 903. Plaintiff, accordingly, cannot tie the alleged harassment to his national origin, ethnicity, or religion.

### b. Severe or Pervasive Conduct

Even if Plaintiff adequately connected the harassment to his protected characteristics, he fails to show the harassment was severe or pervasive.

Harassment is actionable under Title VII and NJLAD "only if it is so severe and pervasive that it 'alters the conditions of the victim's employment' and creates an 'abusive working environment.'" *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001)). "The environment must be objectively hostile, not just hostile in the plaintiff's view." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To find harassment severe or pervasive, courts look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Employment discrimination laws, however, are not "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Herman v. Coastal Corp.*, 348 N.J. Super. 1, 20 (App. Div. 2002). Accordingly, "in considering the totality of the circumstances, [courts] filter out 'simple teasing, offhand comments, and isolated incidents.'" *Kokinchak v.*

*Postmaster Gen. of U.S.*, 677 F. App'x 764, 767 (3d Cir. 2017) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Here, none of the incidents Plaintiff identifies are collectively severe or pervasive. The "Italian" comment took place a year before everything else. In a "rare and extreme case," a single remark can be severe or pervasive. *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 606 (1993). *See Taylor v. Metzger*, 152 N.J. 490, 505–07 (1998) (finding single epithet severe or pervasive where chief supervisor, the county sheriff, directed it against plaintiff in the presence of another supervisor). This is not one of those cases. The record does not demonstrate the "Italian" comment went beyond a "mere offensive utterance." Nor did Plaintiff claim the comment was intimidating, humiliating, or unreasonably interfered with his work. *See Nuness v. Simon & Schuster, Inc*, 221 F. Supp. 3d 596, 602 (D.N.J. 2016) (collecting cases dismissing hostile work environment claims based on single incidents).

Nor were the other alleged incidents severe or pervasive. They instead reflect Plaintiff's poor relationship with his supervisors and dissatisfaction with ordinary employment decisions, neither of which rise to the level of a hostile work environment. *See Wright v. Providence Care Ctr., LLC*, 822 F. App'x 85, 97 (3d Cir. 2020) ("Occurrences such as being ignored, told once to 'shut up,' . . . being temporarily pulled to work on another floor at the facility, receiving a marginally negative performance review without cause, and scheduling annoyances, while no doubt unpleasant, are not objectively 'extreme[.]'"); *Davis v. Solid Waste Servs., Inc.*, 625 F. App'x 104, 107 (3d Cir. 2015) ("While [plaintiff] arguably has provided some evidence of unsafe working conditions, unfair disciplinary decisions, and an unprofessional boss, Title VII is not concerned with these issues."); *Fenter v. Mondelez Glob., LLC*, 574 F. App'x 213, 217 (3d Cir. 2014) ("While [plaintiff] was dissatisfied with his sales team and sales territory assignments,

14

neither his assignments nor the treatment he received rose to the level of an actionable hostile work environment."); *Peace-Wickham v. Walls*, 409 F. App'x 512, 520–21 (3d Cir. 2010) (reassignment, delay in resolution of complaints, ignoring complaints, refusal to allow breaks not severe or pervasive); *Buffa v. N.J. State Dep't of Judiciary*, 56 F. App'x 571, 575 (3d Cir. 2003) ("[E]vidence demonstrating a poor relationship between an employer and an employee is not, by itself, sufficient to sustain a hostile work environment claim.").

To be sure, the Amended Complaint adds new allegations about how passengers treated Plaintiff, (*See* Am. Compl. ¶ 34), how United treated Palestinian, Arab, or Muslim passengers, (*See id.* ¶¶ 54–56), and how United treated other employees, (*See, e.g.*, *id.* ¶¶ 24, 26, 30, 32, 37). Yet none of these additional allegations establish a hostile workplace.[2]

First, Plaintiff alleges a passenger called him a "derogatory term," which United did nothing about. (*Id.* ¶ 34.) "An employer may be liable under Title VII for the harassing conduct of third parties if the employer was aware of the conduct and failed to take reasonable remedial action in response." *Johnson v. Bally's Atl. City*, 147 F. App'x 284, 286 (3d Cir. 2005). Here, however, Plaintiff does not identify the "derogatory term" nor what he said to management. Thus, Plaintiff offers no evidence United knew this "derogatory term" was specific to Plaintiff's national origin, ethnicity, or religion. *See Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 295 (3d Cir. 1999) ("[T]here is simply no evidence that [the employer] had knowledge that the rude language was gender-specific."). In any event, this lone incident was not severe and pervasive; it was, at most, offensive. *Emery v. Uber Techs., Inc.*, No. 20-5156, 2021 WL 941879, at *7 (D.N.J. Mar. 12, 2021) (finding offensive remarks made by passengers to driver not severe or pervasive).

---

[2] The Amended Complaint also includes claims that United reprimanded employees who expressed political or social support for Palestine. (*Id.* ¶¶ 54–56.) Yet Plaintiff does not allege these other employees were reprimanded for being Palestinian. Accordingly, these incidents lack a connection to a protected characteristic. *Rich*, 294 F. Supp. 3d at 281.

15

Second, Plaintiff alleges United mistreated Palestinian, Arab, and Muslim passengers. He points to an incident where "a Muslim family was removed from a flight because a passenger requested an unopened can of soda, even though a nearby passenger received a closed beer can." (Am. Compl. ¶ 54). Plaintiff further claims, "passengers with names like 'Muhammad' or 'Abdel' were routinely flagged and denied check-in," and "every flight to Detroit, Michigan was staffed with two Federal Air Marshals, reflecting an institutional presumption that Arab and Muslim travelers posed security threats." (*Id.* ¶ 56). These incidents do not establish severe or pervasive harassment.

"[C]ourts may look to conduct directed at individuals other than the plaintiff in determining whether a hostile work environment exists." *Nitkin v. Main Line Health*, 67 F.4th 565, 572 n.4 (3d Cir. 2023). But conduct directed at third parties does not, by itself, establish a hostile work environment. Instead, "comments referring to other individuals that were merely overheard by [Plaintiff] are the sorts of 'offhanded comments and isolated incidents' that the Supreme Court . . . cautioned should not be considered severe or pervasive enough to constitute a hostile work environment." *Caver*, 420 F.3d at 263 (quoting *Faragher*, 524 U.S. at 788).

Here, it is not clear whether United, as opposed to the federal government, had the authority to flag individuals, deny them check-in, or staff flights with federal air marshals. These incidents, even if true, do not implicate *United's* conduct. And the allegation that Plaintiff witnessed a Muslim family removed from a flight is not itself severe or pervasive enough to establish a hostile work environment. *Faragher*, 524 U.S. at 788.

Third, the Amended Complaint alleges, in conclusory fashion, that non-Palestinian, non-Arab, and non-Muslim employees did not experience any harassment because they were not Palestinian, Arab, or Muslim. For instance, the Amended Complaint asserts "non-Muslim, non-

16

Palestinian and non-Arabic employes would publish comparatively long messages as well, but due to the fact that they were not Muslim, not Palestinian and not Arabic, they were not penalized" (Am. Compl. ¶ 30); "United ignored [Plaintiff's] grievance, no investigation followed, as United has been firm in their discriminatory and hostile treatment toward those who are Arabic, Palestinian, and Muslim" (*id.* ¶ 32); and "insults [about Plaintiff's cleanliness] were never levied at non-Arabic, non-Palestinian or non-Muslim employees," (*id.* ¶ 37).

But "generalized and bare allegations are insufficient to support a theory of disparate treatment discrimination." *Subh v. Sec. Guard, Inc.*, No. 23-1462, 2023 WL 8447889, at *5 (D.N.J. Dec. 6, 2023). And here, "Plaintiff offers only conclusory allegations that he was consistently treated less favorably than employees outside his protected class." *Id.* Plaintiff provides "no further details beyond such generalized accusations." *Doe v. Sizewise Rentals, LLC*, No. 09-3409, 2010 WL 4861138, at *6 (D.N.J. Nov. 22, 2010). Accordingly, Plaintiff's threadbare, conclusory assertions about the treatment of non-Palestinian, non-Arab, and non-Muslim employees are insufficient to raise Plaintiff's hostile work environment claim beyond the speculative level.

In sum, Plaintiff identifies a handful of isolated incidents, stray comments, routine employment decisions, and tension with his supervisors, along with observations about how the government treated Palestinian, Arab, or Muslim passengers, and assertions about how United treated non-Palestinian, non-Arab, or non-Muslim employees. None of these incidents, individually or viewed together, are severe or pervasive enough to alter the conditions of Plaintiff's employment. *Greer*, 590 F. App'x at 173. Accordingly, the Court **dismisses *without prejudice*** Plaintiff's hostile work environment claims.

### *iii.* **IIED**

The NJLAD "preempts any supplemental common law tort action that is based 'on the same factual predicate.'" *Dzibela v. BlackRock Inc.*, No. 23-02093, 2024 WL 4349813, at *15 (D.N.J. Sept. 30, 2024) (quoting *Gaines v. United Parcel Serv., Inc.*, No. 13-3709, 2014 WL 1450113, at *5 (D.N.J. Apr. 14, 2014)). Accordingly, courts in this District routinely dismiss common law claims (such as IIED) based on the same facts as an NJLAD claim. *See Addison v. Signet Jewelers Ltd.*, No. 23-22956, 2025 WL 1766119, at *9 (D.N.J. June 26, 2025) (dismissing IIED claim as preempted by NJLAD); *Blount v. TD Bank, N.A.*, No. 20-18805, 2023 WL 4621881, at *16 (D.N.J. July 19, 2023) (same); *Dzibela*, 2024 WL 4349813, at *15 (same); *Metzler v. Am. Transp. Grp., L.L.C.*, No. 07-2066, 2008 WL 413311, at *4 (D.N.J. Feb. 13, 2008) (same). Here, the same facts underpin Plaintiff's IIED and NJLAD claims. (*See, e.g.*, Am. Compl. ¶ 130 ("Defendants' conduct toward [Plaintiff] constituted intentional infliction of emotional distress, carried out through a sustained campaign of invidious discrimination and harassment . . . .").) Because the NJLAD preempts Plaintiff's IIED claim, the Court **dismisses it** ***with prejudice***.

In any event, Plaintiff fails to adequately allege IIED. To state an IIED claim, Plaintiff must show: "(1) intentional conduct; (2) the conduct was extreme and outrageous; (3) the conduct proximately caused plaintiff's emotional distress; and (4) the emotional distress was severe." *DeAngelis v. Hill*, 180 N.J. 1, 20 (2004) (quoting *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 366 (1988)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley*, 111 N.J. at 366 (citation omitted). Severe emotional distress "means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Taylor*, 152 N.J. at 515 (citation

18

omitted). "It is not enough to establish that a party is acutely upset by reason of the incident. In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological [conditions]." *Aly v. Garcia*, 333 N.J. Super. 195, 204 (App. Div. 2000). "Complaints such as lack of sleep, aggravation, headaches and depression have been frequently deemed insufficient as a matter of law." *Innes v. Marzano-Lesnevich*, 435 N.J. Super. 198, 237 (App. Div. 2014).

The Amended Complaint fails on several fronts. First, Plaintiff does not allege Defendants intended to cause emotional distress. Second, Plaintiff has failed to demonstrate any conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley*, 111 N.J. at 366 (citation omitted). Third, Plaintiff alleges only that he experienced "chronic anxiety, fatigue, headaches, heart palpitations, insomnia, and loss of appetite." (Am. Compl. ¶ 133.) While Plaintiff was "acutely upset," he has not shown he suffered "physical illness or serious psychological [conditions]." *Aly*, 333 N.J. Super. at 204. Thus, had the NJLAD not preempted Plaintiff's IIED claim, the Court would nonetheless dismiss it.

IV. **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 26) is **GRANTED**. Count II (hostile work environment under Title VII), to the extent it is pled against the Individual Defendants, and Count III (IIED) of the Amended Complaint are **DISMISSED** *with prejudice*. Count I (hostile work environment under NJLAD) and Count II, to the extent it is pled against United, are **DISMISSED** *without prejudice*. Plaintiff shall have thirty (30) days from the date of this Opinion to file an amended pleading addressing the deficiencies identified herein. An appropriate Order accompanies this Opinion.

**DATED: 1/23/2026**

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge